**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 18-21053-CIV-GAYLES**

**JEFFREY PETER DATTO, Ph.D.,**

       **Plaintiff,**

**v.**

**ASSOCIATION OF AMERICAN
MEDICAL COLLEGES,** *et al.*,

       **Defendants.**

_____/

**MOTION TO DISMISS BY DEFENDANTS ASSOCIATION OF AMERICAN MEDICAL
COLLEGES, DREXEL UNIVERSITY, TEMPLE UNIVERSITY, THE OHIO STATE
UNIVERSITY, AND LOMA LINDA UNIVERSITY[1]**

      Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant Association of American Medical Colleges ("AAMC") moves this Court to dismiss Plaintiff's claims against AAMC in their entirety. As explained in the Memorandum in Support, this Court lacks personal jurisdiction over AAMC, and Plaintiff's claims against AAMC fail to state a claim upon which relief can be granted.

      Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Defendant The Ohio State University ("OSU") moves this Court to dismiss Plaintiff's claims in their entirety. As explained in the Memorandum in Support, this Court lacks personal jurisdiction over OSU, lacks subject matter jurisdiction over some of Plaintiff's claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted.

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), Defendants Temple University – of The Commonwealth System of Higher Education ("Temple") and Drexel University ("Drexel") move this Court to dismiss Plaintiff's claims against them in their entirety. As explained in the Memorandum in Support, this Court lacks personal jurisdiction over Temple and Drexel and lacks subject matter jurisdiction over Plaintiff's breach of contract claim against Temple. In addition, Plaintiff's claims against Temple and Drexel fail to state a claim upon which relief can be granted.

Pursuant to Fed. R. Civ. P. 8, 12(b)(2, 3, & 6), and 12(e); 28 U.S.C. §§ 1391(b) & 1406; and Local Rule 7.1, Defendant Loma Linda University (hereinafter "Loma Linda") files its Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, or, in the alternative, Motion to Dismiss for Failure to State a Cause of Action and Motion to Dismiss for Improper Pleading and Incorporated Memorandum of Law.

Respectfully submitted,

**MICHAEL DeWINE**
**ATTORNEY GENERAL OF OHIO**

By:     *s/ Javier A. Pacheco*
JAVIER A. PACHECO
Florida Bar No.: 51368
Porter Wright Morris & Arthur LLP
9132 Strada Place, Third Floor
Naples, FL  34108
Telephone:  (239) 593-2968
Facsimile:   (239) 593-2990
jpacheco@porterwright.com
*Special Counsel for Defendant*
*The Ohio State University*

---

[1] These defendants are jointly filing their Motion to Dismiss in accordance with the Court's Notice of Court Practice (D.E. 6).  As of the date of this filing, no other defendant(s) have entered an appearance in this action.

*s/ Jorge A. Mestre*
JORGE A. MESTRE
Rivero Mestre LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, FL 33134
Telephone:  (305) 445-2500
Facsimile:  (305) 445-2505
jmestre@riveromestre.com
*Counsel for Defendant Association of*
*American Medical Colleges*

*/s Robert a. Burgoyne*
Robert A. Burgoyne
Perkins Coie LLP
700 13th St., NW, Suite 600
Washington, DC 20005
Telephone: 202-654-1767
Facsimile:  202-624-9551
rburgoyne@perkinscoie.com
*Counsel for Defendant Association of*
*American Medical Colleges*

*s/ Bacardi L. Jackson*
Bacardi L. Jackson, Esq.
Florida Bar No.:  47728
Gilda Romano Flam, Esq.
Florida Bar No.:  0715956
THE TUCKER LAW GROUP, LLC
The Professional Center at Riviera Point
7971 Riviera Boulevard, Suite 103
Miramar, Florida  33023
Telephone: (954) 391-8902
Facsimile:   (954) 212-0164
bjackson@tlgattorneys.com
gflam@tlgattorneys.com
*Attorneys for Defendants, Temple University*
*and Drexel University*

*s/ Marci L. Strauss*
Louis J. La Cava, Esq.
Florida Bar No. 507880
llacava@lacavajacobson.com
Marci Strauss, Esq.
Florida Bar No.: 857025
mstrauss@lacavajacobson.com
LA CAVA & JACOBSON, P.A.
501 E. Kennedy Boulevard
Suite 1250
Tampa, Florida  33602
Telephone:  (813) 209-9611
Facsimile:   (813) 209-9511
*Attorneys for Defendant,*
*Loma Linda University*

## **TABLE OF CONTENTS**

Motion to Dismiss ……………………………………………………………………1

Table of Contents ……………………………………………………………………4

Memorandum in Support ……………………………………………………………6

Allegations in the Complaint ………………………..……………………………….6

Standard of Review……………………………………………………………………8

     I.     The Rule 12(b)(6) Standard. ……………………………………………..8

     II.    The Rule 12(b)(1) Standard. ……………………………………………..8

     III.   The Rule 12(b)(2) Standard. ……………………………………………..9

Argument …………………………………………………………………………..11

     I.     Datto's Claims Against the Moving Defendants Must be Dismissed Under Fed. R. Civ. P. 12(b)(2). ………………………………………………………11

          A.    Datto Fails to Allege a *Prima Facie* Case of Personal Jurisdiction Over AAMC. ……………………………………………………….11

          B.    Datto Fails to Allege a *Prima Facie* Case of Personal Jurisdiction Over OSU, Drexel,  Temple, or Loma Linda. …………………………..12

               1.    Datto's On-Line Application is Insufficient. …………………...13

     II.    The Complaint Fails to Satisfy the Notice Pleading Requirements of Fed. R. Civ. P. 8(a) as to Any of the Moving Defendants. …………………………………..15

     III.   The Complaint Fails to State a Claim Against Any of the Moving Defendants and should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). …………………………………………………………..…………...17

          A.    Datto Fails to State a Claim for Breach of Contract (Count I). …………17

               1.    Datto Fails to State a Claim for Breach of Contract Against AAMC ………...…………………………………………………18

               2.    Datto Fails to State a Claim for Breach of Contract Against Drexel, Temple, and Loma Linda.………..…………………………………19

4

       3.      Datto's Breach of Contract Claim Against OSU is Subject to Dismissal under Fed. R. Civ. P. 12(b)(1). ...........................19

B.      Datto Fails to State a Claim Under Title II of the ADA Against OSU or Temple (Count II). ......................................................................20

C.      Datto Fails to State a Claim Under Title III of the ADA Against Drexel, Temple, OSU, or Loma Linda (Count III)… ...............................22

       1.      Neither OSU nor Temple are Places of Public Accommodation. 23

       2.      Datto Fails to State a Claim Under Title III. .......................24

       3.      Attending Medical School is not a Major Life Activity...…........24

D.      Datto Fails to State a Claim for Retaliation Under the ADA Against Any Moving Defendant (Count VI).. ...............................................27

       1.      Datto Fails to State a Retaliation Claim Against AAMC. .........27

       2.      Datto Fails to State a Retaliation Claim Against OSU, Drexel, Temple or Loma Linda...............................................................28

E.      Datto Fails to State a Claim for Disability Discrimination Under Section 504 of the Rehabilitation Act Against Any Moving Defendant (Count IV). .......................................................................................29

       1.      Datto Fails to State a Claim Under Section 504 Against AAMC. ....…..........................................................................29

       2.      Datto Fails to State a Claim Under Section 504 Against the Moving Universities. ...............................................29

F.      Datto Fails to State a Claim for Retaliation Under the Rehabilitation Act Against any Moving Defendant (Count V)... ...............................30

IV.      <u>Loma Linda's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer Venue</u>…... ….......................................................32

Conclusion ................................................................................................34

## MEMORANDUM IN SUPPORT

Plaintiff Jeffrey Datto apparently would like to enroll in medical school. He alleges that he applied for admission at ten different universities in four different states, but that none of those universities accepted him for admission.

Faced with these rejections, Datto filed this lawsuit in which he claims the university defendants[2] denied him admission in retaliation for a previous lawsuit that he filed against a different university. In the alternative, Datto claims that if it wasn't retaliation, then the university defendants' denial of his application constitutes disability discrimination.

While pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys, even a liberal construction of Datto's Complaint cannot overcome its deficiencies in stating any valid claims against AAMC, Drexel, Temple, OSU or Loma Linda (collectively referred to as the "Moving Defendants"). *Silberman v. Miami-Dade Transit*, No. 16-22336, 2016 U.S. Dist. LEXIS 174314 (11th Cir., Dec. 15, 2016) (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)) (internal citation omitted).

## ALLEGATIONS IN THE COMPLAINT

Datto is a Florida resident. (D.E. 1, ¶ 16.) At some unspecified point while living in Florida, Datto applied for admission to ten universities' medical schools, including those of Drexel's, Temple's, OSU's, and Loma Linda's colleges of medicine (collectively, Drexel, Temple, OSU and Loma Linda referred to as the "Moving Universities"), through AAMC's centralized application service. (D.E. 1, ¶ 24.) He then completed a secondary admissions

---

[2] Datto uses the term "University defendants" throughout the Complaint to refer to the ten school defendants. He does not include AAMC within this group. For example, in page 1 he identifies defendants as AAMC **and** ten schools referred to collectively as "University defendants"; in paragraph 16 he references "AAMC **and** each University defendant"; and in paragraph 17 he references "[e]ach University defendant **and** the AAMC." (D.E. 1.) (emphases added)

application for each individual medical school. (D.E. 1, ¶¶ 25-26.) Most of the universities did not offer Datto an admissions interview. (D.E. 1, ¶ 27.) None of the Moving Universities accepted him for admission. *Id.*

At some unspecified time in the past, Datto attended Thomas Jefferson University as a MD PhD student. (D.E. 1, ¶ 19.) He previously filed a lawsuit against Thomas Jefferson University, alleging discrimination under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act claiming that Thomas Jefferson University perceived him as having Bipolar Disorder. (D.E. 1, ¶ 21.) Without any additional factual allegations, Datto accuses the University defendants of denying him admission for one of two reasons: (1) in retaliation for his previous lawsuit against Thomas Jefferson University (D.E. 1, ¶ 29, 56); or (2) solely due to a perceived disability. (D.E. 1, ¶ 56.)

Six of the seven counts in the Complaint include claims against the Moving Defendants. Count VII does not include claims against the Moving Defendants and is therefore not discussed here. Against all of the Moving Defendants, Datto purports to assert claims for breach of contract (Count I), violation of the Rehabilitation Act (Counts IV and V) and violation of Title V of the ADA (Count VI). He also purports to assert claims for violation of Title II of the ADA (Count II) against seven University defendants, including OSU and Temple, and for violation of Title III of the ADA (Count III) against five University defendants, including Drexel, Temple, OSU, and Loma Linda. For the reasons stated below, Datto has failed to state a claim for which relief can be granted against any of the Moving Defendants. His claims also fail because the Court lacks personal jurisdiction over the Moving Defendants and lacks subject matter jurisdiction over Datto's breach of contract claim against OSU and Temple. Therefore, all of Datto's claims against the Moving Defendants must be dismissed.

**STANDARD OF REVIEW**

I.     **The Rule 12(b)(6) Standard.**

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, and accept factual allegations as true. *Feketa v. Zacharzewski,* No. 2:18-cv-14156, 2018 U.S. Dist. LEXIS 128888 (S.D. Fla., Aug. 1, 2018). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements of Fed. R. Civ. P. 8(a). Fed. R. Civ. P. 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require detailed factual allegations ...", but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Id.* Also insufficient is a complaint which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*

II.    **The Rule 12(b)(1) Standard.**

The plaintiff bears the burden of demonstrating that a court has subject matter

jurisdiction. *Bierer-Carter v. United States*, 806 F. Supp. 2d 1245, 1248 (S.D. Fla. 2011) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 (11th Cir. 2005)). A defendant may attack subject matter jurisdiction under Rule 12(b)(1) by making a "facial attack." *U.S. v. Spitzer*, 245 Fed. App'x 908, 910 (11th Cir. 2007). When there is a "facial attack" on the complaint, courts "look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Bierer-Carter*, 806 F. Supp. at 1248 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

### III.    The Rule 12(b)(2) Standard.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Organic Mattresses, Inc. v. Environmental Res. Outlet, Inc.*, No. 17-21905, 2017 U.S. Dist. LEXIS 166628 at *5 (S.D. Fla., Oct. 6, 2017) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)) (internal citation omitted). A prima facie case requires factual allegations "with reasonable particularity" that there is the possible existence of sufficient "contacts between [the party] and the forum state." *Organic Mattresses, Inc.*, 2017 U.S. Dist. LEXIS 166628 at *6 (quoting *Mellon Bank PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citation omitted)); see also *iRenew Bio Energy Solutions, LLC v. Harvest Direct, LLC*, No. 11-81310, 2012 WL 13019219, at *2 (S.D. Fla., July 10, 2012) (dismissing complaint for lack of personal jurisdiction where the complaint "is almost entirely devoid of any factual allegations concerning Defendants' contacts with the state of Florida").

Plaintiff's claims brought to this Court relying on diversity jurisdiction must also be pled with sufficient allegations to meet the requirements of Florida's long-arm statute and the Due

Process Clause of the Fourteenth Amendment. *Energy Smart Indus., LLC v. Big R of Lamar, Inc.*, No. 11-23627, 2012 U.S. Dist. LEXIS 103991, *3 (S.D. Fla., July 26, 2012). Pursuant to the long-arm statute, Florida courts can exercise personal jurisdiction over an out-of-state defendant in two ways. First, Florida courts can exercise general personal jurisdiction over any claims against a defendant—whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205. Thus, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 1204 (quoting *Daimler AG*, 571 U.S. at 122).

Second, Florida courts can exercise specific personal jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida if those contacts fall within one of nine statutorily enumerated categories. *See* Fla. Stat. Ann. § 48.193. As explained in more detail below, Plaintiff has not met any of the foregoing requirements and has thus failed to properly allege personal jurisdiction as to any of the Moving Defendants.

<u>**ARGUMENT**</u>

I.   <u>**Datto's Claims Against the Moving Defendants Must be Dismissed Under Fed. R.**</u>
     <u>**Civ. P. 12(b)(2).**</u>

The Court should dismiss Datto's Complaint as to the Moving Defendants under Fed. R.

Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over nonresidents AAMC, Drexel,

Temple, OSU and Loma Linda.

   **A.   Datto Fails to Allege a *Prima Facie* Case of Personal Jurisdiction Over**
        **AAMC.**

There is no basis in Datto's allegations for the Court to exercise general jurisdiction over

AAMC in light of the due process constraints articulated in *Daimler* and applied by the Eleventh

Circuit in *Carmouche*.  *See supra* at 10. AAMC is incorporated in Illinois and headquartered in

Washington, D.C., not Florida. In his jurisdictional allegations, plaintiff alleges that he paid an

online application fee to AAMC while living in Miami-Dade County and that "[e]ach University

defendant and the AAMC consistently and yearly collect application fees from numerous Florida

residents who apply to their programs." (D.E. 1 ¶¶ 16 – 17.) These allegations do not show that

any "exceptional" facts are present that would support a finding that AAMC is essentially "at

home" in this forum. *See Daimler*, 571 U.S. at 139 n. 19.

Nor is AAMC subject to specific jurisdiction under Fla. Stat. Ann. § 48.193. Datto has

not pled facts to support personal jurisdiction under any of the nine statutorily enumerated

categories in § 48.193. His claims against AAMC appear to arise from his use of AAMC's

centralized application service. (Doc 1 ¶ 24.) Although he asserts a claim for breach of contract

against AAMC, he does not allege how AAMC breached any contract that it has with him, much

less that AAMC breached a contract that called for AAMC to perform actions in Florida.

Likewise, AAMC did not commit any tortious act against Datto or cause injury to Datto, in

Florida or otherwise. None of the other enumerated statutory bases for specific personal jurisdiction have any connection to the claims Datto attempts to assert against AAMC, whose only alleged act was providing a centralized application service.

Because the Complaint fails to allege sufficient facts to establish personal jurisdiction over AAMC, Datto's Complaint against AAMC must be dismissed.

**B.     Datto Fails to Allege a *Prima Facie* Case of Personal Jurisdiction Over OSU, Drexel,  Temple, or Loma Linda.**

OSU is located in Columbus, Ohio. (D.E. 1, ¶ 5.) Drexel and Temple are located in Philadelphia, Pennsylvania. (D.E. 1, ¶¶ 3,4.) Loma Linda is located in Loma Linda, California. (D.E. 1, ¶6.) Datto alleges that he applied to the Moving Universities' respective colleges of medicine through AAMC's centralized application service, which process required him to pay a fee. (D.E. 1, ¶ 24). Upon receiving a secondary application from each of the Moving Universities, Datto submitted the secondary application and paid the Moving Universities the required fees. (D.E. 1, ¶¶ 25-26). None of the Moving Universities accepted Datto for admission to its college of medicine. (D.E. 1, ¶ 27.) It is unclear from the Complaint whether Datto interviewed with any of the Moving Universities. (D.E. 1, ¶ 27.) That Datto has alleged that he elected to apply for admission to colleges of medicine located in Ohio, Pennsylvania and California and that the Moving Universities did not accept him for admission hardly proves "with reasonable particularity" that there are "sufficient contacts between" the Moving Universities and the state of Florida to make out a prima facie case of jurisdiction. *Organic Mattresses, Inc.*, 2017 U.S. Dist. LEXIS 166628 at *6.

Nor are the Moving Universities subject to specific jurisdiction under Fla. Stat. Ann. § 48.193. Datto has not pled facts to support personal jurisdiction under any of the nine statutorily enumerated categories in § 48.193. Although he asserts a claim for breach of contract against the

12

Moving Universities, he does not allege how the Moving Universities breached any contract that they have with him, much less that the Moving Universities breached a contract that called for them to perform actions in Florida. Likewise, none of the Moving Universities committed any tortious act against Datto or caused injury to Datto, in Florida or otherwise. None of the other enumerated statutory bases for specific personal jurisdiction have any connection to the claims Datto attempts to assert against the Moving Universities.

Because the Complaint fails to allege sufficient facts to establish personal jurisdiction over any of the Moving Universities, Datto's Complaint against the Moving Universities must be dismissed.

### 1.     Datto's On-Line Application is Insufficient.

In addition to the arguments raised, *supra*, Loma Linda, Temple, and Drexel submit that completing on-line applications and/or collecting application fees is wholly insufficient to establish personal jurisdiction. In *Bond v. Ivy Tech State College*, 167 Fed. App'x 103, 104 (11th Cir. 2006) (unpublished), the Court affirmed the dismissal of the plaintiff's complaint for lack of personal jurisdiction and the failure to satisfy Florida's long-arm statute. The plaintiff, a resident of Florida, attempted to maintain the diversity suit against the Indiana school on the basis of its "student admissions packets to Florida residents, maintaining a website, and offering distance learning courses over the Internet." *Id*. Addressing the issue of whether maintaining a website that is visible in a forum confers jurisdiction in said forum for the first time, the Eleventh Circuit Court of Appeals agreed that it did not. *Id*. at 106. In doing so, the *Bond* Court cited to *Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002), where the Court held, a non-resident university's website, which allowed users to "submit electronic admissions applications" did not subject the university to jurisdiction in Texas. *Bond*, *supra* at 106. In so holding, the *Bond* Court noted the

Fifth Circuit's conclusion that, "'a website is, in a sense, a continuous presence everywhere in the world,' the defendant's contacts were 'not in any way 'substantial.'" *Bond*, *supra* at 106 (quoting *Revell*, *supra* at 471).

Courts in other jurisdictions have similarly held that the mere fact that a national university allows for online admissions is insufficient to confer personal jurisdiction in another state. *See Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985) (application by student and acceptance by institution insufficient to confer personal jurisdiction in forum-related activities); *Scherer v. Curators of the Univ. of Missouri and Law School Admissions Council*, 152 F. Supp. 2d 1278, 1282 (D. Kan. 2001) (where *pro se* plaintiff claimed discrimination in compliance with admissions policy, law school website availability in foreign jurisdictions insufficient to establish personal jurisdiction, noting similar Court findings); *Kloth v. Southern Christian University*, 494 F. Supp.2d 273 (D. Del. 2007) ("it would be unreasonable to establish a precedent that every University website that includes online application submissions establishes general jurisdiction in any forum states, even forum states in which the University has establish few, or no, other contacts."); *Bralich v. Sullivan*, No. 17-0547, 2018 WL 1938297 (D. Haw., Apr. 26, 2018) (recognizing that out-of-state schools are not subject to personal jurisdiction based on receipt of tuition or allowing online application submissions); *Isaacs v. Trustees of Dartmouth College*, No. 13-5708, 2014 WL 4186536 (E.D. Pa., Aug. 25, 2014) (school's website which allows admission and enrollment constitute *de minimis* contacts); *Chira v. Columbia Univ. in the City of N.Y.*, No. 05-1964, 2005 WL 8156561 at *5-7 (C.D. Cal., May 4, 2005) (in claim asserting violations of the ADA and Rehabilitation Act, schools receipt of online applications are insufficient to confer jurisdiction). Therefore, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2).

II. **The Complaint Fails to Satisfy the Notice Pleading Requirements of Fed. R. Civ. P. 8(a) as to Any of the Moving Defendants.**

The Court should dismiss Datto's Complaint because it fails to satisfy the notice pleading standard set forth in Fed. R. Civ. P. 8(a).

The Complaint generically pleads that Datto:

- "applied to each University defendant medical school through the AAMC's centralized application service and paid the required fee." (D.E. 1, ¶ 24.)

- Received and completed each University defendants' secondary application and paid a second fee to each University defendant. (D.E. 1, ¶¶ 25-26.)

- Was not accepted for admission by the University defendants. (D.E. 1, ¶ 27.)

- Was not offered an admissions interview by "most" of the University defendants. *Id.*

The Complaint then infers that the reason the University defendants did not offer Datto an admissions interview and/or accept him for admission is because "[p]reviously, plaintiff filed an ADA and Rehab Act complaint in federal Court against Thomas Jefferson University, in part, claiming discrimination for being perceived as having the disability Bipolar Disorder." (D.E.1, ¶ 21.) The Complaint further speculates that either the University defendants were retaliating against him for having filed a lawsuit against Thomas Jefferson University or the University defendants "were influenced by the actions of Thomas Jefferson University and also perceive plaintiff to have the disability bipolar disorder or some other serious mental illness." (D.E. 1, ¶¶ 23, 29.) The allegations under each of Datto's six counts against the Moving Defendants are equally sparse and conclusory. (D.E. 1 ¶¶ 30-79.) Datto's allegations against AAMC are even more limited. Datto merely alleges that he applied to each University defendant medical school through AAMC's centralized application service. (D.E. 1, ¶ 24.)

Datto's allegations are also fatally flawed because he fails to allege specific actions taken by any individual defendant. In a multiple-defendant action, plaintiff's allegations must specify the purportedly unlawful acts of each defendant. *See Dennis v. City of N. Miami*, No. 07-22126-CIV, 2008 WL 783737, at *3 (S.D. Fla., Mar. 21, 2008) (holding that "[t]he Complaint does not pass muster under Rule 8(a)(2)" because "[m]ost of the counts are against multiple defendants, but Plaintiff does not sufficiently specify how each particular defendant committed the alleged offence."); *Gen. Elec. Capital Corp. v. ERMD, Inc.*, No. 03-21492-CIV, 2004 WL 3201610, at *1 (S.D. Fla., Feb. 18, 2004) ("[I]n order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." (citation and internal quotation marks omitted)).

Datto's Complaint is also subject to dismissal because it is a shotgun complaint.  As set forth by the Eleventh Circuit, "[a] complaint is a shotgun complaint where 'it is virtually impossible to know which allegations of fact are intended to support which claims for relief.'" *Anderson v. District Bd. of Trustees of Cent. Fla. Comm. College*, 77 F.3d 364, 366 (11th Cir. 1996). "The unifying characteristic of all types of shotgun pleadings is that they fail … to give the defendants adequate notice of the claims against them and the grounds upon which each claims rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11t Cir. 2015). A complaint also is a shotgun pleading where "the counts incorporate by reference all previous allegations and counts." *Id.*, at 1324-25.

Here, the first paragraph of each count of the Complaint incorporates every preceding paragraph of the Complaint into the count. (D.E. 1, ¶¶ 14, 18, 30, 35, 46, 52, 59, 67, 74.) "[A] complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a

16

combination of the entire complaint" is '[t]he most common type' of shotgun pleadings. *Weiland*, 792 F.3d at 1321. The Complaint provides little notice of which factual allegations support each claim, which gives no guidance as to which Defendants committed which acts.

Datto's Complaint contains no more than conclusory allegations that some or all defendants engaged in disability discrimination, retaliated against him because he filed a disability discrimination lawsuit against an unaffiliated third party, and breached a contract with him. Such conclusory allegations may not be assumed true. *Iqbal*, 556 U.S. at 681. The Complaint neither permits the Court to infer more than the mere possibility of misconduct nor nudges Datto's claims across the line from conceivable to plausible. *Id.* at 680. Accordingly, Datto has not stated a claim of disability discrimination, retaliation or breach of contract upon which relief can be granted, and has not shown that he is entitled to relief. Datto's Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8(a), and is therefore subject to dismissal.

## III. The Complaint Fails to State a Claim Against Any of the Moving Defendants and should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Datto purports to bring six claims against the Moving Defendants. Each count is addressed below, in the following order: Count I (breach of contract), Count II (Title II of the ADA), Count III (Title III of the ADA), Count VI (retaliation under the ADA), Count IV (Section 504 of the Rehabilitation Act), and Count V (retaliation under the Rehabilitation Act).

### A. Datto Fails to State a Claim for Breach of Contract (Count I)[3]

To state a claim for breach of contract under Florida law, the plaintiff must plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages

resulting from the breach. *See Friedman v. New York Life Ins. Co.,* 985 So.2d 56, 58 (Fla. 4th DCA 2008) (citations omitted). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Hernandez Law Offices of Arturo Dopazo, III, P.A.*, No. 1:12-cv-23378, 2012 WL 12895228, at *2 (S.D. Fla., Dec. 3, 2012) (citing *Vega v. T-Mobil, USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).[4]

### 1.    Datto Fails to State a Claim for Breach of Contract Against AAMC.

Datto has not alleged that he is a party to any contract with AAMC. Instead, he asserts that "*[t]he University defendants*" offered him "the potential ability to be fairly and non-discriminatively evaluated for acceptance into their medical school in exchange for filling out their application and paying the application fee." (D.E. 1 ¶ 31.) (emphasis added) Datto claims that he accepted "that offer" and "in consideration filled out the requested application and paid the requisite fee." (*Id.* ¶ 33.) These allegations have nothing to do with AAMC, and do not establish any contract between AAMC and Datto relating to the evaluation of his medical school application. Datto then claims that the contract "was breached when the defendants discriminated against the plaintiff and did not accept, nor even interview the plaintiff." *Id.* ¶ 34. AAMC, however, is not a medical school and does not accept or reject candidates or make decisions about interviews, and nothing in Datto's complaint indicates otherwise. Datto has failed to plead a valid claim for breach of contract against AAMC.

---

[3] Since the Court lacks subject matter jurisdiction, OSU objects to the application of Florida law to any claims against OSU.

[4] AAMC, Drexel, Temple, and Loma Linda assume solely for the purposes of this motion to dismiss that Florida law applies to Datto's breach of contract claim against each defendant.

2.     **Datto Fails to State a Claim for Breach of Contract Against Drexel, Temple, or Loma Linda.**

Datto has not alleged that he is a party to any contract specifically with Drexel, Temple, or Loma Linda.  Instead, he asserts that "[t]he University defendants" offered him "the potential ability to be fairly and non-discriminatively evaluated for acceptance into their medical school in exchange for filling out their application and paying the application fee." (D.E. 1 ¶ 31.) Datto claims that he accepted "that offer" and "in consideration filled out the requested application and paid the requisite fee." (*Id*. ¶ 32.) Datto then claims that the contract "was breached when the defendants discriminated against the plaintiff and did not accept, nor even interview the plaintiff." *Id.* ¶ 34. Datto fails to recognize that medical schools are the "judge[s] of the qualifications of its students." *Militana v. University of Miami*, 236 So.1d 162, 164 (Fla. 3d DCA 1970) (quoting *Connelly v. University of Vt. & State Agric. College*, 244 F. Supp. 156, 160-61 (D. Vt. 1965)). There are no alleged facts from which this Court could conclude that a contract has been breached when a medical school reviews the qualifications of a candidate and determines the candidate is  not suited to attend its school. *Id.* Rather, the medical school has met its obligations under any presumed contract once it conducts its evaluation irrespective of the outcome and absent sufficiently-pled facts from which the alleged discrimination can be inferred.

As Datto failed to plead with specificity which defendant allegedly breached the "contract" or how the "contract" was even breached by Drexel, Temple, or Loma Linda, Datto's claim for breach of contract against Drexel, Temple, and Loma Linda fails.

3.     **Datto's Breach of Contract Claim Against OSU is Subject to Dismissal under Fed. R. Civ. P. 12(b)(1).**

As to OSU, this Count presents a state law claim that is barred by the Eleventh Amendment and over which this Court does not have supplemental jurisdiction. The Eleventh

19

Amendment limits federal courts' jurisdiction over some types of claims. Among those claims are state law claims against state entities and actors in federal court. State entities and state actors are immune from those claims regardless of whether the claims seek damages or prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-102 (1984). Eleventh Amendment immunity thus bars suits against state entities unless the state consents to suit there. *Id.* "It is an "intrusion on state sovereignty . . . when a federal court instructs state officials on how to conform their conduct to state law." *Palm Beach County Envtl. Coalition v. Florida*, 651 F. Supp. 2d 1328, 1338-1339 (S.D. Fla. 2009) (quoting *Pennhurst*, 465 U.S. at 106, 121). Based on this alone, Count I of Plaintiff's Complaint against OSU must be dismissed.

Further, as to OSU, Section 16, Article I of the Ohio Constitution provides that "suits may be brought against the state, in such courts and in such manner as may be provided by law." The Ohio General Assembly has codified the State's waiver of sovereign immunity, but has only consented to "have its liability determined in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties ….". Ohio Rev. Code § 2743.02(A)(1). The Ohio Revised Code then states, specifically, "The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code…". Ohio Rev. Code § 2743.03(A)(1). Therefore, only the Ohio Court of Claims would have jurisdiction over a breach of contract claim against OSU. Because OSU has not consented to this suit or waived its immunity, the breach of contract claim against OSU should be dismissed.

**B.      Datto Fails to State a Claim Under Title II of the ADA Against OSU or Temple (Count II).**

Count II alleges that OSU and Temple decided not to admit Datto to their colleges of medicine because OSU and Temple are "holding against plaintiff the past effects of medications

to treat Bipolar Disorder" (D.E. 1, ¶ 39) as well as his "refusal to be treated for Bipolar Disorder" (D.E. 1, ¶ 40) in violation of Title II of the ADA. To make out a prima facie case of ADA discrimination Datto must show first, that he is disabled; second, that he was qualified for admission to OSU's or Temple's college of medicine; and third, that he was subjected to unlawful discrimination because of his disability. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). Datto does not attempt to assert this claim against AAMC, Drexel, or Loma Linda. Datto does not properly plead this claim against OSU or Temple, and therefore it should be dismissed.

First, the Complaint does not establish that Datto is disabled. Datto merely alleges that OSU and Temple perceived that he had a disability (D.E. 1, ¶ ¶ 23, 38, 56) because a different university previously perceived him as having a disability at some unspecified point in the past (D.E. 1, ¶ 21). Further, the Complaint does not establish how OSU or Temple would have knowledge that a different university previously perceived Datto as having a disability or would have any reason to perceive him as having a disability based on an admissions application.

Second, Datto does not properly plead he was qualified for admission. Datto merely asserts that he "is otherwise qualified for admission to each defendant medical school." (D.E. 1, ¶ 28.)  Nowhere does he articulate the admissions criteria for OSU's or Temple's colleges of medicine or identify how he satisfies those admissions criteria.

As to the third element, while the Complaint generically states that none of the University Defendants accepted Datto for admission to their medical schools, the Complaint does not identify how OSU or Temple responded to his admissions application. Although the Complaint speculates that either OSU and Temple were retaliating against Datto for having filed a lawsuit against Thomas Jefferson University (D.E. 1, ¶ 29) or "were influenced by the actions of Thomas

Jefferson University and also perceive[s] plaintiff to have the disability bipolar disorder or some other serious mental illness" (D.E. 1, ¶ 23), the Complaint lacks allegations that OSU or Temple knew about the prior lawsuit, knew about any actions taken by Thomas Jefferson University, or had any reason to perceive, through an admissions application, that Datto is disabled. Having failed to establish a prima facie case, Datto cannot state a discrimination claim under Title II of the ADA upon which relief can be granted.

### C.   Datto Fails to State a Claim Under Title III of the ADA Against Drexel, Temple, OSU, or Loma Linda (Count III).[5]

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 USC § 12182(a).

"In order to prevail under Title III of the ADA, a plaintiff generally has the burden of proving: 1) that he or she is an individual with a disability; 2) that defendant is a place of public accommodation; and 3) that defendant denied him or her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant on the basis of his or her disability." *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003); *Access Now, Inc. v. South Fla. Stadium Corp.*, 161 F. Supp.2d 1357, 1363 (S.D. Fla. 2001); *Tugg v. Towey*, 864 F. Supp. 1201, 1205 (S.D. Fla. 1994).

Title III's implementing regulations ("Regulations") define the term "place of public accommodation" as "a facility operated by a private entity whose operations affect commerce and fall within at least one of" twelve enumerated categories, none of which include a public

---

[5] Datto does not assert this claim against AAMC.

college or university. 34 C.F.R. 36.104. "Public accommodation" is defined as "a private entity that owns, leases (or leases to), or operates a place of public accommodation." *Id.* The Regulations further define the term "private entity" as "a person or entity other than a public entity." *Id.* "Public entity" is defined as: "(1) Any State or local government; (2) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (3) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act). ( 45 U.S.C. 541)" *Id.*

### 1.     Neither OSU nor Temple are Places of Public Accommodation.

Count III alleges that OSU and Temple violated Title III of the ADA by denying Datto admission to their colleges of medicine due to a perceived disability.  But these claims fail because neither OSU nor Temple are Places of Public Accommodation.

OSU is a public university, legislated into being and governed by the statutory provisions of Ohio Revised Code Chapter 3335.  OSU is recognized as an instrumentality of the State of Ohio. By its terms, Title III of the ADA does not apply to OSU because OSU is a public entity, not a private entity, and is therefore not a "public accommodation" for purposes of Title III. Because Datto cannot meet his burden of proving that OSU is a "place of public accommodation," he cannot prove that OSU discriminated against him under Title III of the ADA.

Similarly, in addition to the reasons set forth above (i.e., that Plaintiff has failed to plead sufficient facts to meet the first and third elements of a *prima facie* of ADA discrimination under Title III), which are incorporated herein by reference, Plaintiff's claim in Count III against Temple also fails because Temple is a public university, legislated into being and governed by the statutory provisions of the Temple University – Commonwealth Act. In accordance with 24

P.S. § 2510-2(7), Temple is recognized as an instrumentality of the Commonwealth of Pennsylvania. By its terms, Title III of the ADA does not apply to Temple because Temple is a public entity, not a private entity, and is therefore not a "public accommodation" for purposes of Title III.

Because Datto cannot meet his burden of proving that OSU and Temple are "places of public accommodation," he cannot prove that OSU or Temple discriminated against him under Title III of the ADA. Accordingly, the Court should dismiss Count III against OSU and Temple.

### 2.    Datto Fails to State a Claim Under Title III.

Count III alleges that Moving Universities have violated Title III of the ADA by denying Datto admission to their colleges of medicine due to a perceived disability. Plaintiff's Complaint, however, fails to allege that he is a qualified individual with a disability, that the Moving Universities denied him full and equal enjoyment of the goods, services, facilities or privileges offered by the Moving Universities on the basis of his disability or how the Moving Universities denied him full and equal enjoyment of the goods, services, facilities or privileges offered by the Moving Universities on the basis of his disability. Without these basic factual allegations to support his claim, Count III against the Moving Universities fails as a matter of law and should be dismissed.

### 3.    Attending Medical School is not a Major Life Activity.

In addition to the above arguments for dismissal, to which Loma Linda, Drexel, and Temple join to the extent applicable, Loma Linda, Drexel, and Temple additionally submit that dismissal with prejudice is warranted because attending medical school is not a major life activity as contemplated by the ADA.

The ADA provides:

> No individual shall be discriminated against on the basis of disability in the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). An individual is considered disabled if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). The phrase "major life activities" include, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).

Loma Linda, Drexel, and Temple submit that dismissal is warranted because Datto has not alleged the existence of a disability as recognized by the ADA. To maintain his causes of action, Datto is required to assert that "his learning disorder restricts his ability to learn in comparison to the general population." *Betts*, 113 F. Supp.2d at 977. As the *Knapp* Court recognized, "Not every impairment that affects an individual's major life activities is a substantially limiting impairment." *Knapp*, 101 F.3d at 481. As applicable to the instant case, Loma Linda, Drexel, and Temple question whether Datto's asserted disability, bipolar disorder, constitutes a substantially limiting impairment. Given the manner in which Datto has styled this case, he has received a Ph. D from a university. He also has a history of academic achievement as established by the fact that he was accepted into a medical school. In light of the foregoing, Datto's claims for violations of the ADA and Rehabilitation Act fail as a matter of law, mandating dismissal with prejudice.

Even if one is to assume, *arguendo*, that Datto is disabled (which Loma Linda, and Temple deny),  attending medical school is not a "major life activity" as defined by the

ADA. In *Betts v. Rector and Visitors of University of Virginia*, 113 F. Supp.2d 970 (W.D. Va. 2000), the Court dismissed a claim for violations of the ADA and Rehabilitation Act in a case where the plaintiff was denied admission to medical school. In doing so, the *Betts* Court recognized that while learning was a major life activity, "attending medical school is not." *Id.* at 976.

In doing so, the *Betts* Court referred to the decision in *Pacella v. Tufts University School of Dental Medicine*, 66 F. Supp.2d 234 (D. Mass. 1999), where the Court found that attending dental school is not a major life activity. *Betts*, *supra* at 976. The *Pacella* Court recognized, "'[a]n impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise, does not substantially limit the major life activity of learning.'" *Id.* at 239 *quoting Knapp v. Northwestern Univ.*, 101 F.3d 473, 481 (7th Cir.1996). The *Pacella* Court further recognized that the "'inability to pursue one career, such as [dentistry], does not constitute a severe impact on an individual's life.'" *Pacella*, *supra* at 239 quoting *McGuinness v. University of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir.1998).

Here, Datto asserts that his preclusion from medical school is a preclusion from his chosen major life activity. The law does not permit this. In *Knapp*, *supra*, the Court recognized that "major life activities" included "basic functions" and not "specific ones such as being an astronaut, working as a firefighter, driving a race car, or learning by playing Big Ten basketball." *Knapp*, *supra* at 481. The *Knapp* Court further recognized that under the ADA and the Rehabilitation Act, a major life activity does not include working at the specific job one chooses. *Id.*; *Byrne v. Board of Educ., School of West Allis-West Milwaukee*, 979 F.2d 560 (7th Cir. 1992); *Welsh v. City of Tulsa, Okla.*, 977 F.2d 1415, 1417 (10th Cir.1992) (major life activity of

working does not necessarily mean working at the job of one's choice). As Datto cannot establish that attending medical school is a major life activity, his causes of action fail as a matter of law.

###### D.     Datto Fails to State a Claim for Retaliation Under the ADA Against Any Moving Defendant (Count VI).

Count VI attempts to raise a retaliation claim under Title V of the ADA.[6] The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). ADA retaliation claims are assessed under the same framework employed for retaliation claims arising under Title VII. *Satchel v. Sch. Bd.*, 251 Fed. App'x. 626, 629 (11th Cir. 2004) (quoting *Standard v. A.B.E.L. Services, Inc*, 161 F.3d 1318, 1328 (11th Cir. 1998)). To establish a prima facie case of ADA retaliation, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Id.*

###### 1.     Datto Fails to State a Retaliation Claim Against AAMC.

Datto does not allege that AAMC took any action against him because of his alleged disability or participation in a suit against Thomas Jefferson University. He alleges in conclusory fashion that the "University defendants are refusing admission to their medical school mainly in part because he sued Thomas Jefferson University[,]" (D.E. 1 ¶ 72), but that allegation has nothing to do with AAMC.

---

[6] The Complaint incorrectly identifies the ADA's anti-retaliation provision as falling under Title IV.  The anti-retaliation provision that Datto cites, 42 U.S.C. § 12203(a), falls under Title V of the ADA.

### 2.   Datto Fails to State a Retaliation Claim Against OSU, Drexel, Temple or Loma Linda.

Datto's Complaint states that he previously filed a lawsuit against Thomas Jefferson University alleging disability discrimination. (D.E. 1, ¶ 21.) The Moving Universities assume, for purposes of this Motion, that filing a lawsuit alleging disability discrimination qualifies as engaging in protected activity. The Complaint also states that Datto was not accepted for admission by any of the University defendants. (D.E. 1, ¶ 27.) The Moving Universities assume, for purposes of this Motion, that not being accepted for admission to medical school could qualify as an adverse action. Datto's retaliation claim nonetheless fails because the Complaint does not establish a causal link between when he filed a lawsuit against Thomas Jefferson University and when he was denied admission to the Moving Universities' colleges of medicine. The Complaint does not identify when Datto filed a complaint against Thomas Jefferson University other than to state that it was "previously" (D.E. 1, ¶ 21) and "in the past" (D.E. 1, ¶¶ 56, 62, 65, 78.) Likewise, the Complaint does not identify when Datto applied for admission to the Moving Universities' respective colleges of medicine, when the Moving Universities notified him that he had not been accepted for admission, or that anyone at the Moving Universities knew that he had previously sued Thomas Jefferson University. Datto has not established that any of the Moving Universities would have accepted him for admission but for his lawsuit against Thomas Jefferson University and has thus failed to state a plausible ADA retaliation claim. See *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 981-82 (11th Cir. 2014), citing *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) (A plaintiff must prove "but-for causation—that the unlawful retaliation would not have occurred in the absence of the protected activity."). The Court should therefore dismiss Count VI.

**E.      Datto Fails to State a Claim for Disability Discrimination Under Section 504 of the Rehabilitation Act Against Any Moving Defendant (Count IV).**

To prove a violation of Section 504, a plaintiff must show that (1) he is disabled within the meaning of the Rehabilitation Act, (2) he is otherwise qualified, (3) he was excluded from, denied the benefit of, or subject to discrimination under a program or activity solely because of his disability, and (4) the program or activity is carried out by a federal executive agency or with federal funds. *See* 29 U.S.C. § 794(a); *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994); *Severino v. N. Fort Myers Fire Control Dist.*, 935 F.2d 1179, 1183 (11th Cir. 1991); *see also Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999).

**1.      Datto Fails to State a Claim Under Section 504 Against AAMC.**

Datto does not allege that AAMC receives federal funding, (*See* D.E. 1, ¶ 55 (alleging receipt of "federal financial assistance" only by "[e]ach University defendant")), does not allege how he is disabled within the meaning of the Rehabilitation Act, *see* 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102, and does not allege how AAMC allegedly discriminated or retaliated against him. In fact, there are no allegations of ***any*** action that AAMC took against Datto in violation of the Rehabilitation Act. Datto's allegations refer solely to the "University defendants." (*See* D.E. 1, ¶¶ 55–57.) He has failed to allege any viable claim for discrimination under Section 504 against AAMC.

**2.      Datto Fails to State a Claim Under Section 504 Against the Moving Universities.**

Count IV alleges that the Moving Universities did not accept Datto for admission to their colleges of medicine either because the Moving Universities were "retaliating against him for suing Thomas Jefferson University in the past" (D.E. 1, ¶ 56) or because the Moving Universities were "solely discriminating against him due to the perceived disability Bipolar

Disorder or the actual disability the medications to treat Bipolar Disorder caused" (*Id.*) in violation of the Rehabilitation Act's anti-discrimination provision.

Datto's Rehabilitation Act discrimination claim fails for the same reasons his ADA discrimination claim fails: he has not properly alleged that he has a disability, or that he was otherwise qualified for admission to any of the Moving Universities' colleges of medicine, nor has he properly alleged that the Moving Universities' decisions to deny his admissions application had anything to do with a disability.

Additionally, the Complaint speculates that the Moving Universities denied his admissions application for one of two reasons: (1) in retaliation for Datto previously filing a lawsuit against Thomas Jefferson University (D.E. 1, ¶ 29, 56); or (2) solely due to a perceived disability. (D.E. 1, ¶ 56.) In other words, "[i]t is obvious that, as written, the complaint fails to allege that plaintiff's disability was *the sole reason* for" the denial of his admissions application "and therefore fails to state a claim." *Blumenthal v. Murray,* 995 F. Supp. 831, 836 (N.D. Ill. 1998) (emphasis added). Datto's Rehabilitation Act claim must therefore be dismissed. *See also Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994), *cert. denied sub nom Sedor v. Runyon*, 515 U.S. 1123 (1995) (holding that a Rehabilitation Act claim must be rejected if the decision was motivated in part by factor other than disability); *Eustice v. Texas A&M Univ*., No. 4:15-CV-03180, 2016 U.S. Dist. LEXIS 136597, at *28 (S.D.Tex. Sep. 30, 2016) (same).

## F.    Datto Fails to State a Claim for Retaliation Under the Rehabilitation Act Against any Moving Defendant (Count V).

A prima facie case for retaliation under the Rehabilitation Act is the same as one under the ADA. *Albra v. City of Ft. Lauderdale*, 232 Fed. App'x 885, 891 (S.D. Fla. 2006). To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action;

and (3) there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Datto's Rehabilitation Act retaliation claim fails for the same reasons that his ADA retaliation claim fails.  *See supra*  at Section III(D). Thus, Count V must be dismissed as to all Moving Defendants.

In addition, Datto's Complaint must be dismissed because he has failed to allege any temporal proximity between the lawsuit filed against Thomas Jefferson University and his rejection from the Moving Universities' respective medical schools.  *See e.g*., *Simpson v. Ala. Dep't of Human Res.*, No. 13-01450, 2017 U.S. Dist. LEXIS 17483 (N.D. Ala., Feb. 8, 2017) (previous lawsuits were too remote in time to establish a causal connection between the lawsuits and any adverse action taken during time period in question). To establish a causal connection between protected activity and an adverse action, the temporal proximity between the two must be very close.  See *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Courts have held that a three-to-four month disparity is insufficient to establish a causal connection.  *Id.*

Datto's allegations lack any facts showing when he filed a complaint against Thomas Jefferson University and the reasons he was denied admission to the Moving Universities' medical schools. Rather, Datto merely claims that he "filed a Rehabilitation Act complaint against Thomas Jefferson University in the past" (D.E. 1, ¶ 62) and that he "has been told the reasons he has been denied admission at some of the medical schools he applied to is because he sued Thomas Jefferson University (D.E. 1, ¶ 64). Simply stated, Datto has failed to allege any facts showing there was a causal relationship between the lawsuit against Thomas Jefferson University and the rejections from the Moving Universities' medical schools. Moreover, he again fails to ascribe any conduct to AAMC, as the only parties referenced in this count are the "University defendants." (D.E. 1, ¶ 65.) As such, Count V should be dismissed.

31

**IV.    Loma Linda's Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer Venue.**

This case is also subject to dismissal as Datto has filed suit against Loma Linda in the wrong venue. In *Cooney v. Barry School of Law*, 994 F. Supp.2d 268, 271 (E.D. N.Y. 2014), in finding that that venue was not proper in New York, the Court recognized that, "The permissible venue for non-employee claims under the ADA, 42 U.S.C. § 12182, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, is determined by the general venue provision for federal question cases, 28 U.S.C. § 1391(b)." Pursuant to 28 U.S.C. §§ 1391(b):

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §§ 1391. Loma Linda is considered to be a resident in any judicial district where it is subject to the Court's personal jurisdiction. 28 U.S.C. §§ 1391(c).

As argued, *supra*, Loma Linda is not subject to this Court's personal jurisdiction as it is a resident of California. More importantly, venue is not proper in the Southern District of Florida as the events at issue did not take place in Florida. As alleged, Datto submitted applications for enrollment in Loma Linda's medical school, located in California. Datto concludes that Loma Linda failed to fairly evaluate him during the admission process, which would have occurred at Loma Linda's school in California (and not in Florida). Based on his own pleadings, it is undeniable that the events which serve as the basis for Datto's causes of action occurred in

California. Given this, venue is clearly not proper, mandating dismissal.

In *Cooney*, *supra*, the Court addressed the exact issue presented in this motion where the *pro se* plaintiff (a New York Resident) asserted claims for violations of the ADA and the Rehabilitation Act stemming from his enrollment in law school in Florida. *Id*. at 269. He sustained an injury to his eye resulting in blindness. *Id*. Due to this condition, the plaintiff was placed on academic probation for missing an assignment and eventually had his enrollment terminated. *Id*. Plaintiff asserted that the school was prejudiced against the disabled because it would not permit him an extended period of academic probation so that his assignments could be turned in timely. *Id*. The defendant moved for dismissal for improper venue or, alternatively, to transfer the matter to the Middle District of Florida. *Id*.

The *Cooney* Court agreed that venue was not proper in New York, finding that jurisdiction did not lie under 28 U.S.C. § 1391(b) because the defendant resided in Florida, which is "where the events giving rise to this action occurred." *Cooney*, *supra* at 271. Undeniably, for the same reasons, venue as to Loma Linda, based on Datto's allegations, is not proper in this District. As pled, Loma Linda is not a resident of Florida for purposes of imposing jurisdiction. More importantly, the admissions process and decisions allegedly made by Loma Linda's representatives (presumably the John Doe defendants) would have taken place at or near Loma Linda's school in California. In light of the similarities, this Court should also find that venue is not proper in Florida as to Loma Linda as a matter of law.

The *Cooney* Court also noted that where venue is improper, the Court can either dismiss the action or transfer it to a proper venue pursuant to 28 U.S.C. § 1406. *Cooney*, *supra* at 271. In line with the *Cooney* Court's ruling, Loma Linda would agree that Datto should be given the choice to have this matter transferred to California if he so chooses

## CONCLUSION

For the reasons set forth above, the Moving Defendants respectfully request that the Court dismiss Plaintiff Jeffrey Datto's claims against them in their entirety.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion to Dismiss by Defendants Association of American Medical Colleges, Drexel University, Temple University, The Ohio State University, and Loma Linda University* was filed electronically and served by ordinary mail, postage prepaid on August 23, 2018 on all counsel or parties of record identified in the Service List below.

### Service List

Jeffrey Peter Datto
3352 W. 98th Place
Hialeah, FL  33018
jpdatto@gmail.com
*Plaintiff, pro se*

Jorge A. Mestre, Esq.
Kingsley Nwamah, Esq.
Rivero Mestre LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, FL  33134
jmestre@riveromestre.com
knwamah@riveromestre.com
*Counsel for Defendant*
*Association of American Medical Colleges*

Caroline Mew, Esq.
Robert A. Burgoyne, Esq.
Perkins Coie LLP
700 13th Street, NW
Suite 600
Washington, D.C.  20005-3960
cmew@perkinscoie.com
rburgoyne@perkinscoie.com
*Counsel for Defendant*
*Association of American Medical Colleges*

Bacardi L. Jackson, Esq.
Gilda Romano Flam, Esq.
The Tucker Law Group, LLC
The Professional Center at Riviera Point
7971 Riviera Boulevard, Suite 103
Miramar, Florida  33023
Telephone: (954) 391-8902
Facsimile:  (954) 212-0164
bjackson@tlgattorneys.com
gflam@tlgattorneys.com
*Attorneys for Defendants, Temple University*
*and Drexel University*

Marci L. Strauss, Esq.
Jason Azzarone, Esq.
La Cava & Jacobson, P.A.
501 E. Kennedy Boulevard
Suite 1250
Tampa, Florida  33602
mstrauss@lacavajacobson.com
jazzarone@lacavajacobson.com
*Counsel for Defendant*
*Loma Linda University*

University of Florida
c/o Office of General Counsel
123 Tigert Hall

34

Florida Atlantic University
c/o Office of General Counsel
777 Glades Road
Boca Raton, FL  33431
*Defendant*

Florida State University
c/o Office of General Counsel
600 W. College Ave
Tallahassee, FL  32306
*Defendant*

University of Central Florida
c/o Office of General Counsel
4000 Central Florida Blvd.
Orlando, FL  32816
*Defendant*

P.O. Box 113125
Gainesville, FL  32611-3125
*Defendant*

University of South Florida
c/o Office of General Counsel
4202 E. Fowler Avenue
Tampa, FL  33620
*Defendant*

Florida International University
c/o Office of General Counsel
11200 S.W. 8th Street, PC 51
Miami, FL  33199
*Defendant*

*s/ Javier A. Pacheco*
_____

JAVIER A. PACHECO
(Florida Bar Number 51368)