UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 18-21053-CIV-GAYLES/LOUIS

JEFFREY PETER DATTO, Ph.D.,

      Plaintiff,

v.

UNIVERSITY OF MIAMI, *et al.*,

      Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

    Defendants, University of Miami (the "University") and Dr. Damien Pearse ("Dr. Pearse"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby move to dismiss the Second Amended Complaint (D.E. 204) filed by Plaintiff, Dr. Jeffrey Datto ("Datto"), for failure to state a claim.

## LEGAL ARGUMENT

I.    **The Rule 12(b)(6) Standard.**

    A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party and accept factual allegations as true. *Feketa v. Zacharzewski,* No. 2:18-cv-14156, 2018 WL8620165, at *1

(S.D. Fla., Aug. 1, 2018). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim also must satisfy the pleading requirements of Fed. R. Civ. P. 8(a). Rule 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Id.* Also insufficient is a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*

## Claims Premised on Denial of Medical School Application

**II.    Datto's claims against Dr. Pearse (Counts VII-XVIII) should be dismissed.**

Datto's discrimination claims against Dr. Pearse, individually, under the Americans with Disabilities Act ("ADA"), Florida Civil Rights Act ("FCRA") and Rehabilitation Act ("Rehab Act") in Counts VII-XVIII all should be dismissed because individual liability is precluded under these three statutes. *See, Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (The ADA does not provide for individual liability, only for employer liability); *Mathis v. Cannon*, 6:12-CV-1535-ORL-36, 2013 WL 690838, at *2 (M.D. Fla. Feb. 7, 2013) (The "FCRA does not impose individual liability"); *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1292 (Fla. 4th DCA 2008) (The "FCRA does not impose liability on individual employees/supervisors"); *Huck v. Mega Nursing Services, Inc.*, 989 F. Supp. 1462, 1464 (S.D. Fla. 1997) (The Rehab Act does not provide for individual liability); *Berkery v. Kaplan*, 518 Fed. Appx. 813, 814 (11th Cir. 2013) (same).

In his Complaint, Datto has asserted discrimination/retaliation claims in Counts VII-XVIII under the ADA, FCRA and Rehab Act against both the University and Dr. Pearse, individually.

Under well-established Eleventh Circuit law, Dr. Pearse cannot be held liable in an individual capacity for any of the discrimination claims asserted against him.[1]  Accordingly, all claims against Dr. Pearse, individually, under the ADA, FCRA and Rehab Act properly should be dismissed.[2]

### III. Datto's disability discrimination claims under the ADA, FCRA and Rehab Act all should be analyzed under the same legal framework.

Claims under the ADA, Rehab Act and FCRA are analyzed under the same framework. *Knowles v. Sheriff*, 460 Fed. Appx. 833, 835 (11th Cir. 2012); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir.2007) (the FCRA is analyzed under the same framework as the ADA); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000) (the Rehab Act is governed by the same standards used in ADA cases); *Holly v. Clairson Industries, LLC*, 492 F. 3d 1247, 1255 (11th Cir. 2007) (Disability discrimination claims under the ADA and the FCRA are analyzed using the same framework and, thus, properly are considered together). Thus, Datto's disability discrimination claims under the three Acts (Counts I-IV, VI and VII-XVIII) are addressed together.

### IV. Counts I and II for alleged medical school admissions discrimination under the ADA and Rehab Act, respectively, should be dismissed for failure to state a claim.

Counts I and II alleging discriminatory denial of Datto's application for admission to medical school are verbose, confusing and fail to state claims under either a general discrimination theory or a failure to accommodate theory. While Datto lists several alleged "accommodations" that he requested from the University during his application process in the allegations supporting

---

[1]  The only existing exception to this rule exists under the ADA and only applies to retaliation claims where the conduct at issue was made unlawful by the ADA's public services provision. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1165-6 (11th Cir. 2003). Here, this exception does not apply because the alleged conduct at issue is governed by the ADA's employment provisions.
[2]  This argument also applies to potential Defendants John Does 1-5 and John Does 6-10, as they, too, are individuals who cannot be sued under any of the three Acts. Accordingly, Counts I-IV and VI against John Does 1-5 and Counts XIII-XVIII against John Does 6-10 all should be dismissed as they relate to these not yet identified Defendants.

these two counts, these claims appear to sound in the University's alleged discriminatory denial of Datto's application for admission to medical school due to an alleged disability and not a failure to accommodate his alleged disability in the application process. Due to the lack of clarity, these claims will be addressed under both a general discrimination and failure to accommodate theory.

"In order to prevail under Title III of the ADA, a plaintiff generally has the burden of proving: 1) that he or she is an individual with a disability; 2) that defendant is a place of public accommodation; and 3) that defendant denied him or her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant on the basis of his or her disability." *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003); *Access Now, Inc. v. South Fla. Stadium Corp.*, 161 F. Supp.2d 1357, 1363 (S.D. Fla. 2001. The ADA defines "disability" to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012) (citing 42 U.S.C. § 12102(1); *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir.2010)). Merely having an impairment does not automatically make one disabled for ADA purposes. *Id.* (citing *Toyota Motor Mfg. Ky. v. Williams*, 534 U.S. 184, 195 (2002).

"To qualify as having an actual disability, the plaintiff must show that his impairment limits a major life activity." *Brown,* 871 F. Supp. 2d at 605. "Major life activities" include activities that are of "central importance to daily life," such as walking, seeing, hearing, performing manual tasks, concentrating, learning, hearing, speaking, breathing, and working. *Id.* In addition, the limitation placed on the major life activity as a result of the disability must be "substantial." *Id.* The EEOC defines the term "substantially limits" as "(i) being unable to perform a major life activity that the average person in the general population can perform or (ii) being significantly

restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the average member of the general population." *Id.* (citing 29 C.F.R. § 1630.2(j)). The following factors are to be considered in determining whether an individual is substantially limited in performing a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. *Id.*

Datto has not alleged the existence of a disability as recognized by the Acts. To maintain his claims, Datto is required to assert that he has a disability. Yet, he only alleges that he may suffer from one of several disabilities, never committing to a confirmed diagnosis. Further, while he makes the conclusory allegation that the disability he suffers from "substantially limits his ability to learn, think, sleep, and interact with other people in comparison to the general population" (D.E. 204 ¶¶ 17, 88), he fails to demonstrate how his unidentified impairment substantially limits the major life activities he lists. In fact, Datto's allegations actually undermine the premise that he has a disability because his pleadings state that his alleged disability, when diagnosed, resulted, not from any condition but, rather, from medication that he previously was prescribed. (D.E. 204 at ¶¶ 19, 90).  Not only does this allegation contradict the notion that Datto currently suffers from a disability, it also demonstrates that his alleged impairment does not satisfy the criteria for "substantial limitation." This allegation detracts from the notion that the alleged disability is of long-term duration and impact, essential criteria for a disability.

To plead a cognizable "failure to accommodate claim" under either the ADA or Rehab Act, a plaintiff must allege that: "(1) he is an otherwise qualified individual with a disability, i.e., he is able to perform the essential functions of the position in question with or without reasonable accommodation; and (2) if a reasonable accommodation is necessary, the denial of the

accommodation was made in a discriminatory fashion." *Manickavasagar v. Virginia Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635, 644 (E.D. Va. 2009) (citing *Baucom v. Potter*, 225 F.Supp.2d 585, 591 (D.Md.2002)).

The allegations supporting Datto's claims in Counts I and II fail to satisfy this criterion. Nowhere in Counts I and II does Datto allege that he is able to perform the essential functions of a medical school student with or without reasonable accommodation. Moreover, Datto fails to allege that the denial of the accommodation he allegedly requested -- *ie.,* an interview with the admissions committee -- was made in a discriminatory fashion. It is certainly not discrimination to deny a medical school applicant an admission interview just because he asks for one. Further, courts have contemplated the impact of interviews in the medical school admissions process and have found that "students selected without interviews are just as successful academically as students selected with interviews." *Baker v. Bd. of Regents of State of Kan.*, 721 F. Supp. 270, 273 (D. Kan. 1989) (also noting that students selected by interviews do not perform better in residency). Accordingly, Datto's claims in Counts I and II of the Second Amended Complaint fail to state cognizable claims under the ADA and Rehab Act under a failure to accommodate theory.

**V.      Retaliation Claims in Counts III and IV fail to state a claim.**

In Counts III and IV, Datto brings claims under the ADA and the Rehab Act, alleging that the University denied him admission to its medical school program in retaliation for filing a discrimination lawsuit over ten years earlier against Thomas Jefferson University ("TJU"). (D.E. 204 at ¶ 162, 175). Datto's discrimination lawsuit against TJU does not constitute a statutorily protected activity as it relates to Datto's instant retaliation claims against the University.

To establish a *prima facie* case of retaliation under the ADA and Rehab Act, the plaintiff must allege (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse

action; and (3) a causal link between the protected activity and the adverse action. *Satchel v. Sch. Bd.*, 251 Fed. App'x. 626, 629 (11th Cir. 2004); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).[3] In *McShane v. Ashcroft*, No. 03-20470-CIV, 2004 WL 5561681, at *8 (S.D. Fla. Aug. 31, 2004), aff'd sub nom. *McShane v. U.S. Attorney Gen.*, 144 Fed. Appx. 779 (11th Cir. 2005), this Court held that a plaintiff's prior discrimination lawsuit did not constitute protected activity as it related to her new retaliation claims, where the prior lawsuit was against an unrelated former employer almost three years before the filing of her claims against her subsequent employer.  2004 WL 5561681, at *8. This holding directly undermines Datto's contention that his unrelated discrimination lawsuit against TJU, over 10 years before he applied to and was denied admission to the University's medical school, constitutes statutorily protected activity as it relates to his instant claims. Datto's lawsuit against TJU simply cannot form the basis of a retaliation claim against an unrelated entity over a decade after the lawsuit was filed. Accordingly, this Court should dismiss Datto's retaliation claims in Counts III and IV.

**VI.    Count V for breach of contract should be dismissed for failure to state a claim.**

In Count V, Datto alleges that the University entered into an implied contract with him when it allegedly agreed not to disqualify his application for admission to its medical school program due to his dismissal from TJU and that it breached that contract when it subsequently denied him admission solely due to his dismissal from TJU. (D.E. 204 at ¶208-211). Datto has not and cannot sufficiently allege the elements of a breach of a contract claim.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish:

---

[3]  Under both the ADA and the Rehab Act, Datto must plead and prove that his protected conduct was the but-for cause of the adverse employment action. *Frazier-White v. Gee*, 818 F. 3d 1249, 1258 (11th Cir. 2016). *See Smith v. City of Fort Pierce, Fla.,* 565 Fed. Appx. 774, 778 (11th Cir. 2014) *Edwards v. Gwinett Cty. Sch. Dist.*, 977 F. Supp. 2d 1322, 1334 (N.D. Ga. 2013). He fails to plead "but for" causation.

(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Merle Wood & Assoc., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013). The question of whether a valid contract exists is a threshold question of law that properly may be decided by the court. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* An oral contract is subject to all basic requirements of contract law, and mutual assent is a prerequisite for the formation of any contract. *Id.* (citing *Gibson v. Courtois*, 539 So.2d 459, 460 (Fla.1989); *Jacksonville Port Auth. v. W.R. Johnson Enters. Inc.*, 624 So.2d 313, 315 (Fla.Dist.Ct.App.1993); *Barroso v. Respiratory Care Servs., Inc.*, 518 So.2d 373, 376 (Fla.Dist.Ct.App.1987); *see also Tracfone Wireless, Inc. v. Simply Wireless*, Inc., 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) ("An implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent").

Here, Datto plainly has not and cannot plead the essential elements of a breach of contract claim under Florida law. Nowhere in Count V has Datto alleged who entered into this alleged contract with him on behalf of the University. Since he has not and cannot identify who entered in to this alleged contract with him, he cannot establish mutual assent, a critical element of an implied contract. Accordingly, on this ground alone, Count V should be dismissed.

**VII.    Count VI under the FCRA should be dismissed for failure to state a claim.**

Datto alleges that the University violated the FCRA by denying him admission to medical school based on his alleged disability and his age. By its terms, the FCRA only applies to "[a]ny violation of any Florida statute making unlawful discrimination because of ... age, handicap, [etc.] ... in the areas of education, employment, housing, or public accommodations." Fla. Stat. § 760.07.

Datto cannot identify any Florida statute that prohibits discrimination in the area of education.

A claimant must exhaust administrative remedies by filing a complaint with the Florida Commission on Human Relations ("FCHR") or the EEOC as a perquisite to asserting a judicial claim of discrimination. §§ 760.02(2); 760.11(1). Section 760.11 provides a comprehensive administrative procedure that is a mandatory condition precedent to suit under the FCRA. *Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1324-25 (M.D. Fla. 2013) Datto filed a charge and the FCHR's records from his administrative complaint are attached as Exhibit 1.[4] (Doc. 62 ¶ 202.)

Datto's charge of discrimination asserted the same allegations of discrimination alleged in Count VI. The FCHR dismissed the charge for lack of jurisdiction. (Ex. 1 pp. 1-4.) The ultimate "Notice of Dismissal" provided: "The Commission previously notified you that the information submitted on your complaint was insufficient for the Commission to begin its investigation" and that Datto had been afforded leave to amend. (Ex. 1 p. 5.) It concluded, "the Commission does not have authority to investigate, and the complaint will be dismissed." (*Id.*) The dismissal constitutes final agency action that informed Datto of his right to judicial review, which is now ongoing in the Florida Third District Court of Appeal, Case No. 3D18-1231.

Datto argues that the FCHR has failed to act and, thus, he may proceed judicially. That is false. The FCHR found that Datto's allegations do not implicate conduct violative of the FCRA. In fact, the allegations are so far beyond the FCRA's ambit that it did not have statutory authority to investigate. Unless and until the Third District reverses, Datto's FCRA claim is barred.

---

[4] "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); Fed. R. Evid. 201(d). Fed. Rule of Evid. 201(c)(2) states that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." The FCHR's records generated in response to Datto's administrative complaint "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" and are therefore appropriately considered via judicial notice. Fed. R. Evid. 201(b)(2).

**<u>Employment Related Claims</u>**

VIII.    **Counts VII, X and XIII for failure to accommodate a disability under the ADA, FCRA and Rehab Act, should be dismissed.**

In Counts VII, X and XIII, Datto attempts to allege claims under the ADA, FCRA and Rehab Act for the University's alleged failure to grant Datto's purported requests for disability accommodation. (D.E. 204 at ¶¶ 355-356, 580-581, 797-798). Datto alleges that the University improperly refused to grant his request to (1) certify his disability for his application for the NIH K22 grant, (2) force Dr. Pearse to act as primary mentor of Datto's VA-CDA-2 grant application, (3) force Dr. Dalton Dietrich to assign a primary mentor for Datto's NIH K22 grant, and (4) provide Datto with "protected time" to complete his NIH K22 grant application. (*Id.*). Although the term "protected time" is undefined, it appears to mean time during which Datto would not be required to perform his normal work duties. Datto fails to state a legally cognizable claim for failure to accommodate as his requested "accommodations" are not reasonable as a matter of law.

"To state a *prima facie* claim for failure to accommodate, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). The plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." *McKane*, 363 Fed. Appx. at 681 (11th Cir. 2010) (citing *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)).

"The term reasonable accommodation means: … Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential

functions of that position ….” 29 C.F.R, § 1630.2(o)(1)(ii). A plaintiff “is not entitled to the accommodation of his choice, but only to a reasonable accommodation.” *McKane*, 363 Fed Appx. at 681 (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000)). An employee cannot merely make “a mundane request for a change at the workplace;” the request must be “sufficiently direct and specific,” and “explain how the accommodation requested is linked to some disability.” *Negrón-Marty v. Wal-Mart Puerto Rico, Inc.,* 862 F. Supp. 2d 48, 63 (D.P.R. 2012) (quoting *Reed v. LePage Bakeries, Inc.*, 244 F. 3d 254, 259 (1st Cir. 2001)). “The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions.” *Id*. (citing *Lucas* 257 F.3d at 1255-56).

Notably, nowhere in Datto’s Complaint does he allege that applying for grants is an essential function of his job. In fact, none of these “accommodations” have anything to do with the essential functions of Datto’s job. Obtaining outside research grants is neither a condition nor an essential function of Datto’s employment and, for that reason, Datto does not allege that it is. Even if all of Datto’s demands were met, they would not allow him to perform his job’s essential functions. Accordingly, they are not reasonable accommodations under the ADA, FCRA and Rehab Act and Datto’s claims in Counts VII, X and XIII should be dismissed.

**IX.   Counts VIII, XI and XIV of the ADA, FCRA and Rehab Act, respectively, should be dismissed for failure to state a claim.**

In Counts VIII, XI and XIV, Datto attempts to state disparate treatment discrimination claims under the ADA, FCRA and Rehab Act, respectively, alleging that, if the University did not disqualify his grant applications because of his filing of this lawsuit, then it was because the University did not want to be bothered with Datto’s disability and requests for accommodation, and that the University did not want Datto to advance to a faculty position at the Miami Project to Cure Paralysis because of his alleged bipolar disorder. (D.E. 204 at ¶¶ 417, 636, 861). Datto,

however, has failed to plead all elements of a discrimination claim under the three Acts.

"[P]ost-*Iqbal*, a plaintiff must allege a prima facie case of discrimination" to survive a motion to dismiss. *McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*, 623 Fed. Appx. 980, 983 (11th Cir. 2015) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) and *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004)). A *prima facie* case of discrimination requires a plaintiff to establish four elements: (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *Carter v. Bowman*, 172 Fed. Appx. 915, 917 (11th Cir. 2006) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). Datto's claims fail to satisfy the third and fourth elements.[5]

To satisfy the fourth element of his *prima facie* case for discrimination, Datto must identify a specific comparator and allege sufficient facts to show that he and his comparator "are similarly situated in all relevant respects." *Word v. AT&T*, 576 Fed. Appx. 908, 914 (11th Cir. 2014) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). In other words, the proffered comparator "must be nearly identical to the plaintiff." *Woods v. Cent. Fellowship Christian Acad.*, 545 Fed. Appx. 939, 945 (11th Cir. 2013) (quoting *Wilson,* 376 F.3d at 1091). Conclusory statements that a plaintiff was treated differently than members outside his protected class are insufficient to carry plaintiff's burden. *Id*. The failure to identify a valid comparator is "fatal to establishing a *prima facie* case." *Corbin v. Town of Palm Beach*, 996 F. Supp. 2d 1275, 1285-86

---

[5] It is unclear, based on Datto's allegations, whether the adverse employment actions complained of have to do with the University's lack of support for Datto's grant applications or the termination of his employment. To the extent it is the former, there has been no adverse employment action. In order to be subject to the protection of the anti-retaliation provisions of the Acts, the adverse employment action complained of must be "substantial." *Hill v. Lazarou Enterprises, Inc.*, No. 10-61479-CIV, 2011 WL 860526, at *7 (S.D. Fla. Feb. 18, 2011). Refusal to support a grant application that is not an employment requirement is not a substantial adverse action.

(S.D. Fla. 2014) (citing *Silvera v. Orange Cty. School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001));

*see also Jackson v. BellSouth Telecommc'ns*, 372 F.3d 1250, 1274 (11th Cir. 2004).

Here, Datto has listed several current and former employees of the University as comparators for his disparate treatment claims under the three Acts; however, he has failed to set forth sufficient allegations demonstrating that these alleged comparators are similarly situated to Datto in "all relevant respects." Datto simply alleges that several of his alleged comparators' relationships with Dr. Pearse deteriorated and they were not terminated as a result. This alone is insufficient to demonstrate that the comparators were similarly situated in all relevant respects to Datto. Thus, Datto's disparate treatment claims in Counts VIII, XI and XIV should be dismissed.

**X.    Datto's retaliation claims in Counts IX and XII should be dismissed.**

In Counts IX and XII, Datto alleges that the University and Dr. Pearse retaliated against him for filing his medical school admissions discrimination lawsuit and threatening to file an EEOC charge against his employer by disqualifying his grant applications, which are discussed in detail in Section VIII, *supra*. (D.E. 204 at ¶ 488, 508, 511-513, 515,702, 722,725-727,729). These claims should be dismissed for failure to exhaust administrative remedies.[6]

Before commencing a lawsuit, a plaintiff must first exhaust his administrative remedies by timely filing a charge of discrimination. *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010). "[T]he starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." *Anderson v. Embarq/Sprint,* 379 Fed. Appx. 924, 926 (11th Cir. 2010) (quoting *Alexander v. Fulton Cty.,* 207 F.3d 1303, 1332 (11th Cir. 2000)). A plaintiff's judicial complaint is limited by

---

[6] As set forth in FN 4, the alleged retaliatory conduct also is not a sufficiently substantial adverse action to give rise to a retaliation claim.

the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Judicial claims are allowed if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id*. at 1279–80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

In *Barton v. Donahue*, No. CIV.A. 13-0642-CG-C, 2015 WL 505664, at *4 (S.D. Ala. Feb. 6, 2015), the plaintiff's EEOC charge had the boxes checked for sex discrimination and retaliation, but the charge only discussed alleged attacks against the plaintiff because of previously filed EEOC complaints. The plaintiff later filed a lawsuit in the district court, alleging, among other things, sex discrimination. *Id.* The court held that, although the plaintiff checked the box for sex discrimination, the plaintiff's claims sounding in sex discrimination should be dismissed because there were no facts alleged in her charge that would support such a claim. *Id.* Similarly, in *McKinney v. Eastman Kodak Company*, 975 F. Supp. 462, 464 (W.D.N.Y. 1997), the plaintiff filed a charge of discrimination with the EEOC and checked the boxes for sex discrimination, age discrimination and retaliation. The EEOC charge, however, only included allegations of age discrimination. *Id*. The plaintiff moved to amend her age discrimination complaint to include causes of action for sex discrimination. *Id.* The court denied this relief, holding that, despite checking the box for sex discrimination, the charge was insufficient to support such a claim. *Id.* at 466 (citing *Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1403 (2d Cir.1993)).

Here, Datto's EEOC charge alleges discrimination in a conclusory fashion. (*See* Sec. Am. Compl. Ex. "B"). Other than checking the box for retaliation, the EEOC charge contains not a single factual allegation to support a retaliation claim. The mere fact that Datto checked the

retaliation box is insufficient as a matter of law to allow him to bring a claim for retaliation in this proceeding.

**XI.     Count XV should be dismissed for failure to state a claim.**

In Count XV, Datto attempts to state a claim for retaliation under the Rehab Act based on the University's alleged failure to support his grant applications. Datto alleges he engaged in protected activity by filing this lawsuit and by stating that he was considering filing an EEOC charge in connection with the University's lack of support for his research grant applications and the University retaliated by failing to support his grant applications.

As discussed above, the University's alleged lack of support for Datto's research grant applications does not constitute a materially adverse employment action, as required. *Hill,* 2011 WL 860526, at *7; *Kavanaugh v. Miami-Dade Cty*., 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011). Failure to support an employee's grant application, where there is no allegation that obtaining grants was a condition of employment (which it was not), is not sufficiently adverse to give rise to a retaliation claim. Second, under the Rehab Act, Datto must plead and prove that his protected conduct was the but-for cause of the adverse employment action. *Edwards v. Gwinett Cty. Sch. Dist*., 977 F. Supp. 2d 1322, 1334 (N.D. Ga. 2013). However, Datto alleges that that "[i]f UM … [was not] discriminating against him due to a disability, then they were solely retaliating against him due to Plaintiff exercising his rights and filing claims under the Rehab Act." (D.E. 204 ¶ 968.) Thus, Datto alleges that the reason the University took the actions it did was due either to discrimination or retaliation. "For a retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action, not just a substantial or motivating factor." *Bolden v. S.A.B.E*., No. 6:15-cv-84, 2016 WL 4030243, at *3 (S.D. Ga. July 26, 2016). Datto has failed to do so and, thus, Count XV should be dismissed.

**XII.    Counts XVI, XVII and XVIII under the ADA, FCRA and Rehab Act, respectively, should be dismissed for failure to state a claim.**

In Counts XVI, XVII and XVIII, Datto alleges that the University terminated his employment in retaliation for filing EEOC charge # 510-2019-01807, which states that the University failed to accommodate his disability by allegedly delaying certain grant applications submitted by Datto to certain third parties. (D.E. 204 at 982-983, 992-993, 1005-1006); (D.E. 204 Ex. "B"). The alleged requests for accommodation at issue in this charge are discussed in detail in Section VIII, *supra*, which is incorporated into this argument by reference. The requested accommodations that were denied, and form the basis for EEOC charge # 510-2019-01807, are not reasonable as a matter of law. Consequently, this EEOC charge does not constitute protected activity.

To establish a *prima facie* case of retaliation under the ADA, FCRA and Rehab Act, the plaintiff must allege (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Satchel*, 251 Fed. Appx. at 629. An EEOC charge does not constitute a statutorily protected activity unless the plaintiff can demonstrate that he had an objectively reasonable belief that his employer's conduct was discriminatory. *Barker v. Missouri Dept. of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008). In order for a proceeding to constitute protected activity, an employee's participation must not only be in good faith, but must also be reasonable. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004); *See also Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741 (7th Cir. 2010).

Here, as discussed in Section VIII above, the denied accommodations relating to support for Datto's grant applications that form the basis of the EEOC charge that allegedly resulted in Datto's termination are not reasonable accommodations as a matter of law. These alleged accommodations have no relation to Datto's employment with the University and were not

necessary for him to do his job. Datto could not have filed this EEOC charge in good faith with an objectively reasonable belief that the alleged accommodations requested were denied solely due to discrimination when the accommodations requested were objectively unreasonable and not at all related to Datto's employment. Accordingly, Datto has failed to plead cognizable claims for retaliation in Counts XVI, XVII and XVII and those claims should be dismissed.

**XIII.    Count XIX for breach of contract should be dismissed for failure to state a claim.**

In Count XIX, Datto attempts to state a claim against the University for breach of contract. The alleged contract, a copy of which is attached to Datto's Complaint (D.E. 204 at ¶ 1011), is a copy of a letter from Dr. Dalton Dietrich to the Craig H. Neilsen Foundation LOI Review Board. The purpose of the letter, as clearly stated therein, was to "support the submission of Jeffrey Datto." The letter states that, if Datto was awarded the grant, the University would provide the space, equipment, time and support Datto required to attain the goals of the proposed research. Datto alleges the University breached this contract when it withdrew the time and support he required to attain the goals of the proposed research and terminated him. (*Id.* at ¶ 1021.)

Datto has failed to allege a claim for breach of contract as a matter of law. In order to show the existence of a contract, the plaintiff must show three main elements - - (1) there must be mutual assent to the contract's formation and mutuality of obligation; (2) there must be evidence of an agreement on the contract's essential terms; and (3) there must be an offer and acceptance. *Clark v. Clark*, No. 11-14135-Civ-Martinez/Lynch, 2012 WL 13015054, at *2 (S.D. Fla. Feb. 1, 2012). In addition, there must be consideration and sufficient specification of terms so that obligations involved can be ascertained. *United States v. ETJ Management, Inc.,* No. 07-22770-Civ-Torres, 2009 WL 10668241, at *2 (S.D. Fla. Feb. 25, 2009). Here, Datto has failed to plausibly allege the essential elements of a contract between him and the University based on the University's letter to

a third party in support of Datto's grant application. In that letter, the University merely assured the Foundation that, if Datto's grant application was approved and the grant awarded, it would provide him the necessary support to do the required research. Datto, however, never received the grant. Thus, clearly, no obligation on the part of the University arose to provide Datto the necessary space, equipment, time and support for the research for which the grant originally had been sought. Datto has failed to state a claim for breach of contract and, thus, Count XIX should be dismissed.

**XIV.   Count XX for breach of contract should be dismissed for failure to state a claim.**

In Count XX of the Second Amended Complaint, Datto alleges that the University breached an alleged contract with him when it "discipline[d] [him] in a manner that was not fair nor equitable" by allegedly holding unprofessional conduct against him during his appeal of the University's termination of his employment. (D.E. 204 at ¶ 1030). The alleged contract that was breached was a University discipline policy set forth in the University's Discipline Appeal Form attached to Datto's Second Amended Complaint as Exhibit "E." (*Id.* at ¶ 1029). This claim fails as a matter of law because an employer's policies do not constitute a binding contract.

"It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." *Bank of Am., N.A. v. Crawford*, 2:12-CV-691-FTM-99, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013); *see also LaRocca v. Xerox Corp.*, 587 F. Supp. 1002, 1004 (S.D. Fla. 1984); *Linafelt v. Bev, Inc.*, 662 So. 2d 986, 989 (Fla. 1st DCA 1995); *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576 (Fla. 5th DCA 2002). Here, the Discipline Appeal Form attached to Datto's Second Amended Complaint does not contain any language indicating that it is intended to form a contract. As described in the form, the provision that Datto claims was breached is a

University policy. (D.E. 204 at ¶ 1029). This policy cannot form the basis of a breach of contract

claim. Accordingly, Count XX of Dato's Second Amended Complaint should be dismissed.

**XV.   Datto's Defamation Claim in Count XXI Should Be Dismissed.**

In Count XXI, Datto attempts to assert a cause of action for defamation against the

University and Dr. Pearse, alleging that Dr. Pearse published the following statements while acting

in his capacity as an employee of the University: (1) "The undertaking of those grant applications

was on your time." (D.E. 204 at ¶ 1034.), (2) "The development of the 3D staining model was your

idea that you insisted upon, despite our previous published expertise of standard methods for

immunostaining employed over many years by many staff members. Although I had insisted to

use our standard technique you were adamant on this device and yes, it failed and was a waste of

time." (*Id.* at ¶ 1038.), and (3) "Your refusal to perform your responsibilities constitutes

insubordination under the University's Discipline policy." (*Id.* at ¶ 1041.)[7] None of these

statements can support a claim for defamation. "The elements of a defamation claim are: (1)

publication; (2) falsity; (3) defendant must act with knowledge or reckless disregard for the truth

if the matter concerns a public official or with negligence if the matter concerns a private person;

(4) actual damages; and (5) the statement must be defamatory." *Woodhull v. Mascarella*, No.

1:08CV151-SPM/AK, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009). Here, the statements at

issue are not defamatory and were not published.

Defamatory statements "tend to subject someone to hatred, distrust, ridicule, contempt or

disgrace or tend to injure one in one's business or profession." *Astro Tel, Inc. v. Verizon Florida,*

---

[7] According to Datto, the first and second alleged defamatory statements were published by Dr. Pearse in an email to Datto, copying Marcela Ward, Dr. Dalton Dietrich and Dr. Mousumi Ghosh. (D.E. 204 at ¶1033, 1038.). The third statement at issue was contained in Datto's termination letter on February 18, 2019. Datto believes that Dr. Pearse published this third statement to the individual responsible for drafting Datto's termination letter. (*Id.* at ¶¶ 1041-1045.)

*LLC*, 979 F. Supp. 2d 1284, 1301 (M.D. Fla. 2013) (quoting *American Airlines, Inc. v. Geddes*, 960 So.2d 830, 833 (Fla. 3d DCA 2007)). "Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Report, Inc.,* 271 F. 3d 1305, 1306 (11th Cir. 2001) (internal quotations and citation omitted). Here, the statements alleged to be defamatory, objectively, could not cause Datto to be subjected to hatred, distrust, ridicule, contempt, disgrace or injury in his profession. Further, the second and third alleged defamatory statements constitute an opinion. *Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336 (Fla. 3d DCA 1996) ("Statements of pure opinion cannot constitute actionable defamation"). Therefore, the statements at issue cannot be defamatory as a matter of law.

Moreover, the three statements at issue were not published. Communications among management or directors of an institution do not constitute publication for the purposes of defamation. *Hullick v. Gibraltar Private Bank & Tr. Co.*, 3D18-0203, 2019 WL 4456072, at *3 (Fla. 3d DCA Sept. 18, 2019). The alleged defamatory statements at issue were communicated in internal emails among Datto's supervisors and in the termination letter provided to Datto. These statements were not published under Florida law and cannot form the basis of a defamation claim.

**XVI.    Count XXII of the Second Amended Complaint Should Be Dismissed.**

In Count XXII, Datto purports to state a cause of action under the Fair Labor Standards Act ("FLSA"). He alleges that he was employed in an FLSA exempt managerial role, but requested to be re-classified as non-exempt after technicians resigned or were terminated. (D.E. 204 at ¶¶ 1056-1059.) Datto further alleges that the University did not replace the technicians, resulting in his working "a significant amount of overtime" for which he was not compensated. (*Id.* at ¶ 1058.)

Datto states that he worked weekends during the summer of 2018 and, at one point, participated in a research project that allegedly required him to work nights. (*Id.* at ¶¶ 1062, 1070.)

The FLSA is triggered when either the employer falls under the FLSA's enterprise coverage provision or a particular employee falls under the FLSA's individual coverage provision. *Polycarpe v. E&S Landscaping Serv.*, Inc., 616 F.3d 1217, 1220 (11th Cir. 2010). To properly allege a *prima facie* FLSA claim under the enterprise provision, he must plead (1) an employment relationship, (2) that the employer engaged in interstate commerce, and (3) that the employee worked over forty hours per week but was not paid overtime wages. *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1373 (S.D. Fla. 2016); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir.2008). To properly plead a *prima facie* FLSA claim under the individual coverage provision, Datto must plead that he was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315-16 (11th Cir. 2011). Datto has plainly failed to state a cause of action under either provision of the FLSA. He has not alleged that the University participates in interstate commerce or that, as an employee, he regularly utilized the instrumentalities of interstate commerce.

Datto also fails to allege that he worked over a forty-hour work week, as required under the Act. *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1069 (N.D. Ill. 2018). While he generally alleges that he worked overtime without sufficient pay, he does not state the dates of employment, his approximate salary during the timeframe at issue, how many hours he worked in a week or how many overtime hours he allegedly worked without being paid the

proper salary and when. Absent such allegations, the University is not on notice of the factual basis for Datto's FLSA claim. *Labriola v. Clinton Enter. Mgmt., LLC*, 2016 WL 1106862, at *3 (N.D. Ill. Mar. 22, 2016); *Kwan Bom Cho v. GCR Corp.*, 2013 WL 675066, at *2 (N.D. Ill. Feb. 22, 2013); *Wilson v. Pioneer Concepts, Inc.*, 2011 WL 3950892, at *2–3 (N.D. Ill. Sept. 1, 2011).

## CONCLUSION

Datto has failed to properly plead any of the claims he attempts to state in his Second Amended Complaint. All such claims should be dismissed.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ /s/ Teresa Ragatz
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Jordan D. Isicoff
Florida Bar No. 1004162
Jordan@irlaw.com

*Attorneys for the University of Miami*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served this 2nd day of October, 2019, via CM/ECF upon all parties authorized to receive service via CM/ECF and via e-mail upon Jeffrey Peter Datto, *pro se*, 3352 W. 98th Place, Hialeah, Florida 33018, jpDatto@gmail.com.

By: */s/ Teresa Ragatz*
Teresa Ragatz