**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 18-CV-21053-GAYLES/LOUIS

JEFFREY PETER DATTO, PH.D.,

      Plaintiff,

v.

UNIVERSITY OF MIAMI, *et al*.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendants University of Miami and Dr. Damien Pearse's Motion to Dismiss (ECF No. 211) and Plaintiff Jeffrey Datto's Motion for Relief from Local Rule 15.1 and to Be Allowed Leave to Amend Second Amended Complaint (ECF No. 251). The Motions were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Darrin P. Gayles, United States District Judge (ECF Nos. 139, 140, 141). The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned recommends that Defendants' Motion to Dismiss be **GRANTED in part (Counts I–XV, XIX–XXI) and DENIED in part (Counts IX, XII, XV XVI–XVIII)**; and that Plaintiff's Motion for Leave to Amend be **DENIED**.

## I.   BACKGROUND

### A.  Factual Background

Plaintiff Jeffrey Datto's allegations in these consolidated cases arise from his relationship with Defendant the University of Miami ("the University") as a potential medical school candidate,

and as an employee. In the Second Amended Complaint, he alleges that the University discriminated against him on the basis of his disability and unlawfully denied him admission into its medical school; and terminated his employment as a research associate.

In 2005, Plaintiff Jeffrey Datto was a MD/PhD student enrolled at Thomas Jefferson University ("TJU"), a member school of the Association of American Medical Colleges (the "AAMC") (Second Am. Compl. ¶ 15).[1]  Plaintiff did not graduate from TJU; he was dismissed three days before his graduation. Plaintiff sued TJU in Pennsylvania state court, alleging that he had been discriminated against for being perceived as having bipolar disorder, and that the school had breached a contract to reinstate Plaintiff into its medical program. The case settled but Plaintiff was not reinstated as a medical student.

Thereafter, he began applying to other medical schools, including the University's medical school. Plaintiff alleges that he was amply qualified for admission into the University's medical school because he received a score of 32 on his MCAT,[2] had an undergraduate grade point average of 3.82, had significant work experience, and received ten letters of recommendation (¶¶ 31–34). Despite his academic qualifications and experience, Plaintiff's first application was rejected by the University in 2014;[3] each year since then that he has applied, he has likewise been rejected.

Plaintiff alleges that sometime before applying to the University he spoke to Dr. Richard Weismann, Dean of Admissions, regarding his interest in applying to the medical school, and Dr. Weismann advised him that the University would not consider applicants who had been previously

---

[1] The facts recited herein are taken from the Second Amended Complaint (ECF No. 204). The factual allegations contained in the Second Amended Complaint are taken as true for purposes of the Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

[2] The Medical College Admission Test. *See* https://students-residents.aamc.org/applying-medical-school/taking-mcat-exam/about-mcat-exam/.

[3] The Second Amended Complaint does not allege the dates of his first application but Plaintiff's response in opposition does not refute that his earliest application was first rejected in 2014.

dismissed from another medical school (¶ 44–46). After this conversation, Plaintiff believed he could never apply to the University (¶ 47). Sometime later however, Plaintiff discussed the effects of depression and mental illness with Pascal J. Goldschmidt, another Dean of Admissions, which prompted Plaintiff to reach out to him to inquire whether he could apply to the University. Plaintiff and Dean Goldschmidt scheduled a meeting. Plaintiff alleges that during this meeting, he disclosed that TJU had dismissed him three days before his graduation because he had been perceived as being bipolar and the litigation that ensued from TJU's decision to dismiss and deny his request to be reinstated into the school (¶53). During their conversations, Dean Goldschmidt explained that it was the University's policy to deny admittance into the medical school to any applicant that had been previously dismissed from an AAMC medical school. Plaintiff requested that an exception be made for him and Dean Goldschmidt represented that he wanted to see Plaintiff succeed and transfer into the medical school as a third-year student (¶ 60).

Plaintiff also met with three members of the medical school's admissions committee: Dean Weismann, Dr. Alex Mechaber, and Dr. Ana Campo (¶56). Plaintiff alleges that these communications culminated in a contractual agreement between the University and Plaintiff for the admissions committee to fairly consider Plaintiff's application to its medical school without regard to his past at TJU, and in exchange Plaintiff would retake the MCAT, complete clinical shadowing and community service, and publish his research (¶¶ 60–62). Plaintiff took steps to fulfil his perceived obligations under the contract by shadowing other doctors, volunteering, and continuing his research and submitting publications. During this time, Plaintiff submitted a second application to the University's medical school and requested that he be granted an interview. Notwithstanding, his application was denied without an interview.

In 2017, Plaintiff submitted his most recent application to the University's medical school

and requested to meet with anyone from the admissions committee or from the program's "new management." Dean Weismann responded to his request and informed him that his application had been denied, without being interviewed, because of the "events that occurred at [TJU]", which Plaintiff interpreted to mean that his application was denied because he suffered from a mental disability (¶ 69–70).

During the time Plaintiff sought admission to the medical school, he was also employed as a research associate at the University. Plaintiff began working at the University in January of 2011 under the supervision of Dr. Damien Pearse. Plaintiff received satisfactory performance evaluations for the eight years he was employed at the University (¶ 404). Plaintiff alleges that applying to grants was a benefit of his employment at the University, and he was evaluated, in part, on his ability to secure grants while at the University (¶¶ 314, 346).

Plaintiff alleges that from October through December 2018, he applied for three grants: a grant from the Craig H. Neilsen Foundation, the VA-CDA-2 grant, and the NIH K22 grant. (¶¶ 316, 324, 340). After expressing some reservations, Dr. Dietrich, a University faculty member and the scientific director for the Miami Project to Cure Paralysis, wrote a letter of support on Plaintiff's behalf with respect to the Craig H. Neilsen Foundation grant (¶¶ 318–322). The letter stated the University would "provide the space, equipment, time, and support [Plaintiff] requires to attain the goals of the proposed research, and to facilitate his development as an academic scholar." *See* Craig H. Nielsen Grant Letter (ECF No. 204 at 137). Dr. Pearse served as Plaintiff's mentor for the VA-CDA-2, which was a "mentor-sponsored" grant (¶ 326). After Plaintiff initiated a lawsuit against the University for discriminatory admissions practices, Dr. Pearse revoked his mentorship for the VA-CDA-2 grant (¶¶ 326, 349). With respect to the NIH K22 grant, the grant-funding organization required that Plaintiff submit a certification of disability as part of his grant

application (¶ 342). Plaintiff sought such a certification from the University's human resource department ("HR"), by providing his past medical records. On multiple occasions, Plaintiff pressed HR to issue him the requested certification letter, but none was ever provided (¶¶ 342, 378). On February 1, 2019, Plaintiff met with the University's HR Manager, Marcella Ward, to discuss the situation with his grants. (¶ 352). Plaintiff alleges that Ward told him that she, Dr. Pearse, and Dr. Dietrich knew about his admissions discrimination lawsuit against the University (¶ 353).

On January 28, 2019, Dr. Pearse sent an email to Plaintiff, copying Ms. Ward, Dr. Dietrich, and Dr. Mousumi Ghosh, telling Plaintiff that the undertaking of applying to various grants was done on Plaintiff's time and criticizing Plaintiff's methodology for his research (¶ 1033–1038). A week later on February 5, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") (¶ 354). In his charge, Plaintiff checked a box for "Retaliation" and alleged the University was discriminating and retaliating against him by delaying his grant applications. On the same day, Plaintiff obtained a right to sue letter from the EEOC (¶ 354). Sometime after, Plaintiff met with Dr. Dietrich and Dr. Pearse to discuss the status of his grant applications and request that he not be asked to work after 5:30 PM or on the weekends because he wanted to help his pregnant wife with their 15-month-old child. Plaintiff alleges that his requests were approved and at the end of the meeting Dr. Pearse explained why he withdrew his support of Plaintiff's VA CDA-2 grant, calling Plaintiff incompetent. Plaintiff became upset, an argument ensued, and a security officer was called to intervene (ECF No. 204 ¶¶ 423–430). Plaintiff believes Dr. Pearse purposefully provoked Plaintiff so that the University would terminate his employment. A week later Plaintiff told Dr. Pearse he found his actions deplorable. On February 18, 2019, the University terminated Plaintiff from his position as a research assistant (¶ 372). The University allegedly notified Plaintiff of the termination via letter which explained as its basis his "refusal to perform

[his] responsibilities constitutes insubordination under the University Discipline's policy. (¶372). Plaintiff appealed his termination, however, his appeal was denied due to Plaintiff's unprofessional conduct and Plaintiff's employment was not reinstated (¶ 373).

## B. Procedural Background

Plaintiff, proceeding *pro se*, initiated the present action in this Court on March 20, 2018 (ECF No. 1). Plaintiff amended his complaint as a matter of course on September 17, 2018 (ECF No. 62). The First Amended Complaint alleged eight counts against thirteen defendants under the Americans with Disabilities Act, 42 U.S.C. § 1201, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"), the Florida Civil Rights Act, Fla. Stat. § 760, et seq. ("FCRA"), and Florida common law for breach of contract and intentional infliction of emotional distress. Four of the defendants settled their claims with Plaintiff and were voluntarily dismissed; and five defendants were never served. The First Amended Complaint was dismissed in an order finding that the complaint failed to meet the requirements of Federal Rule of Civil Procedure 8, to allege a basis for personal jurisdiction over some of the defendants, and to serve others (ECF No. 189). Plaintiff was afforded leave to amend his complaint against only the University. The Court then consolidated this suit with Plaintiff's separately filed complaint against the University alleging that he had been terminated from his employment with the University for discriminatory and retaliatory reasons.

Plaintiff filed the Second Amended Complaint on September 18, 2019, alleging twenty-two counts of discrimination, failure to accommodate, disparate treatment under the ADA, Rehab Act, and FCRA, as well as claims for breach of contract, defamation, and violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 201 *et seq*, against the University, Dr. Damien Pearse, and John Does 1 through 5 (ECF No. 204). The claims can be summarized as follows: (1)

education claims, in which Plaintiff alleges that the University rejected his application to the medical school either because Plaintiff is disabled, or in retaliation for his suit against TJU, another AAMC medical school; (2) employment claims, in which Plaintiff alleges that the University terminated him either because Plaintiff was disabled or in retaliation for suing the University; and failed to reasonably accommodate him by not supporting his grant applications; (3) contract claims, in which Plaintiff alleges that he entered into three separate contracts with the University regarding his admission to the medical school, support of one of his grant applications, and to not be unfairly terminated; (4) a defamation claim; and (5) a claim under the FLSA.

Plaintiff also filed an Expedited Motion for Preliminary Injunction (ECF No. 205) against the University, seeking reinstatement to his position as a research associate, and admission into the University's medical school. Following an evidentiary hearing, I entered a Report and Recommendation recommending that the preliminary injunction be denied because based on the evidence adduced at the hearing Plaintiff had not shown irreparable harm, that his claims were likely to succeed, or that a balance of the harms justified entry of an injunction (ECF No. 246). Judge Gayles adopted the Report and denied Plaintiff's Expedited Motion for Preliminary Injunction (ECF No. 260).

While Plaintiff's motion was pending, the University and Dr. Pearse filed the subject joint Motion to Dismiss arguing that Plaintiff had failed to state any claim for which relief could be granted (ECF No. 211). In opposition, Plaintiff responded that he had stated a claim for relief, and chiefly that he had identified his disability, his qualifications, and how he was discriminated and retaliated against. He attached the following exhibits to his response: (1) the declaration of Peter C. Badgio, Ph.D.; (2) University's disciplinary policy; and (3) template for an FLSA complaint (ECF No. 228-1). After Defendants had replied, Plaintiff filed a motion for leave to file a third

amended complaint (ECF No. 251), which the Defendants opposed (ECF No. 255). In his motion for leave, filed after I entered the Report recommending denial of his motion for preliminary injunction, Plaintiff seeks leave to amend deficiencies in the Second Amended Complaint, specifically adding more details regarding his disability, his meetings with University administrators, grant applications, and the publication of defamatory statements. The Court addresses both of Plaintiff's motions below.

## II.  STANDARD OF REVIEW

Defendants argue that the Second Amended Complaint should be dismissed for failure to state any claim for which relief can be granted pursuant to Rule 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not provide detailed allegations, a plaintiff's complaint must provide "more than labels and conclusions." *Id.* at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Rather, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient *factual* matter in his complaint to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion to dismiss, all of the complaint's factual allegations are "taken as true and construed in the light most favorable to the plaintiff." *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. Nov. 21, 2014) (citing *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A plaintiff successfully presents a plausible claim for relief when he pleads facts that, if true, allow a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Such a reasonable inference is possible if the factual allegations

8

are "enough to raise a right to relief above the speculative level." *Fed. Trade Comm. v. Student Aid Center, Inc*., 281 F. Supp. 3d 1324, 1331 (S.D. Fla. Dec. 30, 2016) (citing *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are held to a less stringent standard than those filed by lawyers, and thus are construed liberally. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citing *Tanenenbaum v. United States*, 148 F.3d 1262, 163 (11th Cir. 1998). *Pro se* litigants are nonetheless still required to comply with the minimum pleading standards. *Albra v. Advan*, Inc., 490 F.3d 826, 829 (11th Cir. 2007) (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (quotations omitted)). The more lenient pleading standard does not permit courts to act as a *pro se* party's counsel or to rewrite an otherwise deficient pleading. *McCone v. Pitney Bowes, Inc.,* 582 F. App'x 798, 800 (11th Cir. 2014).

## III.   DISCUSSION

### A.  Claims Against Dr. Pearse Under ADA, FCRA, and Rehab Act

Plaintiff brings claims against Dr. Pearse, Plaintiff's supervisor, in his individual capacity, under the ADA, FCRA, and Rehab Act for discrimination and retaliation based on either his disability or decision to bring suit against the University. Because Dr. Pearse cannot be individually liable for the alleged misconduct under the federal and state statutes, the claims against him should be dismissed with prejudice.

#### 1.  Discrimination Claims Under ADA

In Counts VII and VIII, Plaintiff alleges discrimination and failure to accommodate claims under the ADA against Dr. Pearse. The ADA prohibits disability discrimination in three contexts: employment, public services, and public accommodations. *See Albra*, 490 F.3d at 829. Subchapter I of the ADA prohibits discrimination in employment on the basis of a disability. *Id*. The anti-

discrimination provision of subchapter I of the ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." *Albra*, 490 F.3d at 830. The ADA does not define an "employer" to include an individual person and as such the statute has been found to preclude individual liability. *Id*. (citing *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996)).

Because Dr. Pearse does not fall within the ADA's definition of "employer," he cannot be held individually liable for violations of the anti-discrimination provision of the ADA. Accordingly, I recommend that the claims against Dr. Pearse in Counts VII and VIII be dismissed.

### 2. Retaliation Claims Under the ADA

The ADA's anti-retaliation provision provides that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter...." 42 U.S.C. § 12203(a) (emphasis added). In Counts IX and XVI, Plaintiff alleges that Dr. Pearse is personally liable under the ADA for retaliating against him because Plaintiff brought charges against the University by withdrawing support of Plaintiff's grant application and for wrongful termination, respectively. Defendant moves to dismiss both counts because the ADA does not permit individual liability within the context of employment under the ADA.

Plaintiff, relying on *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1165-6 (11th Cir. 2003), argues that his retaliation claims against Pearse under the ADA should survive because Dr. Pearse is the recipient of federal funding (¶¶ 327–330). The University disputes this fact, arguing

that the recipient of the grants is the University, not Dr. Pearse. Whether Dr. Pearce is the actual recipient of the federal grants is a factual question not to be determined in a motion to dismiss. Notwithstanding, Plaintiff's retaliation claims against Dr. Pearse should be dismissed because they arise in the employment context.

In *Shotz*, plaintiff brought suit against commissioners of a municipality in their individual capacity for alleged retaliation in violation of the ADA. The Eleventh Circuit analyzed the question of whether the commissioners could be individually liable for the purported violations. The appellate court held that individual liability is not prohibited for violations of the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), where the misconduct is prohibited by the ADA's provisions concerning public service, including those instances where the individual was a recipient of federal grant funds. *Shotz* is distinguishable in that the claims were brought against a local municipality for retaliation "which occurred outside the employment context," and here Plaintiff's claims against Pearse stem from Pearse's purported misconduct in his capacity as Plaintiff's direct supervisor while Plaintiff was employed at the University.

When the Eleventh Circuit did consider the question of whether a defendant employer could be individually liable under the ADA, the appellate court held that within the employment context, individual liability is precluded. *See Albra*, 490 F.3d at 834. In *Albra*, the plaintiff brought suit against his corporate employer and its registered agents in their individual capacity for discrimination and retaliation based on his HIV-positive status. There, the appellate court affirmed the district court's dismissal of the plaintiff's complaint against the individual registered agents and held the employment retaliation claims against the individual registered agents because individual defendants are not open to private actions in the employment context. *Id.*; *see also Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015).

### 3. Claims Under Rehab Act

In Counts XII–XV and XVIII, Plaintiff alleges discrimination and retaliation claims against Dr. Pearse under Section 504 of the Rehab Act, which has been amended and is now included in Section 794 of the Rehab Act. 29 U.S.C. § 794; s*ee also McCacken v. Kamen*, No. 18-20574-CV, 2018 WL 9837823, at *1 (S.D. Fla. June 11, 2018), *report and recommendation adopted sub nom. McCracken v. Kamen*, No. 18-20574-CIV, 2018 WL 9837824 (S.D. Fla. July 17, 2018). Section 794 prohibits the exclusion of, denial of benefits to, or discrimination against handicapped persons under any program or activity receiving federal financial assistance. 29 U.S.C. § 794.

Defendant moves to dismiss Plaintiff's claims under the Rehab Act because the statute does not permit individual liability. In response, Plaintiff argues that he has alleged a claim under the Rehab Act because he has alleged that Dr. Pearse is the recipient of federal funding and that Plaintiff is the intended beneficiary of those federal funds. Plaintiff cites to *Huck v. Mega Nursing Services, Inc.*, 989 F. Supp. 1462 (S.D. Fla. 1997), in which the court reviewed a motion to dismiss plaintiff's discrimination claims under the Rehab Act. There, the court dismissed the plaintiff's claims against his employers in their individual capacity because the plaintiff had not alleged that the defendants, in their individual capacities, were the recipients of federal funds or that plaintiff was an intended beneficiary of such funds. *Id.* at 1464. The court notably did not find that individual liability was permissible under the Rehab Act, in fact, the court specified that in 1997 the question of individual liability was a novel one. *Id.* at 1463.

Since then, courts in the Eleventh Circuit have held Rehab Act does not permit for individual capacity suits. *McCacken,* 2018 WL 9837823, at *5 (dismissing claims of discrimination and retaliation under the Rehab Act against judges because the statute does not provide for individual liability); *see also Berkery v. Kaplan*, 814 (11th Cir. 2013) (dismissing

claims against a doctor at the Veterans Affairs Medical Center because the Rehab Act does not provide for individual liability). Accordingly, Plaintiff's claims for individual liability against Dr. Pearse under the Rehab Act should be dismissed.

### 4. Claims Under FCRA

Defendants also seek to dismiss Plaintiff's claims (Counts X, XI, XII, XVII) against Dr. Pearse for retaliation and discrimination under the FCRA on the basis that the statute does not permit individual liability for violations.

The FCRA makes it unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of that individual's race, color, religion, national origin, age, handicap, or marital status. *See*. Fla. Stat. § 760.10(1)(a). It is well established that the FCRA does not provide for individual liability. *Smith v. Panera Bread*, No. 08-60697-CIV, 2009 WL 10666948, at *2 (S.D. Fla. Mar. 23, 2009); *Mathis v. Cannon*, No. 6:12-CV-1535-ORL-36, 2013 WL 690838, at *2 (M.D. Fla. Feb. 7, 2013), *report and recommendation adopted*, No. 6:12-CV-1535-ORL-36, 2013 WL 687039 (M.D. Fla. Feb. 26, 2013).

Plaintiff argues that *Mathis*, the case cited by Defendants for the proposition that the FCRA does not provide for individual liability, is inapposite because that case did not involve retaliation by a defendant who was the recipient of federal funds. However, this distinguishing fact is not material to the question of whether the FCRA permits individual liability as the statute does not limit its jurisdiction to employers that receive federal assistance. *See*. Fla. Stat. § 760.10. Plaintiff seems to be applying the standard relevant to the Rehab Act.

Because Dr. Pearse cannot be held personally liable for any of the claims against him under the ADA, Rehab Act, and the FCRA, Plaintiff's claims against Dr. Pearse (Counts VII–XVIII)

should be dismissed with prejudice.

## B. Education Claims

### 1. Discrimination and Failure to Accommodate Claims under Title III of the ADA and Rehab Act

In Counts I and II, Plaintiff brings identical discrimination and failure to accommodate claims against the University under the ADA and Rehab Act. Specifically, Plaintiff alleges that the University denied him admission into its medical school because of his disability or because it perceived Plaintiff to be suffering from bipolar disorder or some other mental illness; and that the University failed to provide reasonable accommodations requested by Plaintiff during the application process. According to the University, Plaintiff's claims should be dismissed because he has failed to allege a disability for which he was discriminated against (ECF No. 211 at 4).

Plaintiff's claims under the ADA and Rehab Act are reviewed under the same framework and thus, will be addressed jointly. *Knowles v. Sheriff*, 460 F. App'x 833, 835 (11th Cir. 2012). To state a discrimination under Title III of the ADA, a plaintiff must allege (1) "that he or she is an individual with a disability;" (2) "that defendant is a place of public accommodation;" and (3) "that defendant denied him or her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant on the basis of his or her disability." *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003); *see also McCacken*, 2018 WL 9837823, at *2. The only difference between ADA and Rehab Act claims is with respect to causation, the Rehab Act requires that the discriminatory motive was the sole but-for cause of the discriminatory conduct. *Alboniga v. Sch. Bd. of Broward Cty. Fla.*, 87 F. Supp. 3d 1319, 1332 (S.D. Fla. 2015).

The ADA defines the statutory term "disability" as: (1) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12101(1); *see also*

14

*Equal Employment Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019). A mental impairment is defined as "any mental or psychological disorder, such as an intellectual disability…emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Bipolar disorder and depression have been held to constitute a mental impairment under the ADA. *Price v. Facility Mgmt. Grp., Inc.*, 403 F. Supp. 2d 1246, 1254 (N.D. Ga. 2005).

In its Motion, the University argues that both counts fail as a matter of law because Plaintiff has failed to identify the existence of a disability as recognized by either the ADA or the Rehab Act (ECF No. 211 at 5).

Plaintiff contends that he is an individual "who has the disability bipolar disorder, chronic current depressions, or another equally serious mental illness disorder" (ECF No. 204 ¶ 16). In his response in opposition, Plaintiff argues that he has alleged a disability: a mood disorder that when not controlled limits his ability to learn, sleep, and interact with other people; and he alleges that in the past he has had a severe learning disability while being medicated for bipolar disorder (ECF No. 228 at 5–6). The University argues that because Plaintiff advances multiple theories, it is impossible to determine whether he is disabled (ECF No. 211 at 5).

Plaintiff's claims do not fail simply because he advances competing alternative theories. *See Sawinski v. Bill Currie Ford, Inc.*, 866 F. Supp. 1383, 1386–87 (M.D. Fla. 1994) (denying motion to dismiss because the plaintiff had sufficiently alleged a mental impairment where the complaint alleged the alternative impairments of cranial disfigurement and deafness). At this posture and taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged and identified his disability under the ADA. Plaintiff's allegations that he suffers from bipolar disorder, chronic depression, or a mood disorder constitute a mental impairment, which the ADA broadly defines as an "intellectual disability…emotional or mental illness, and specific learning disabilities." 29

C.F.R. § 1630.2(h)(2).

Plaintiff has also sufficiently alleged that his disability affects major life activities, which are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. S 1630(i). Sleeping has also been identified as a major life activity. *Perklun v. Tierra Del Mar Condominium Association, Inc.*, No. 15-CIV-80801, 2015 WL 8029840 at *9 (S.D. Fla. Dec. 7, 2015). In the operative complaint, Plaintiff alleges his "disability substantially limits his ability to learn, think, sleep, and interact with other people in comparison to the general population." (ECF No. 204 ¶ 17). Such an allegation is sufficient to survive a motion to dismiss. *See Forbes v. St. Thomas University, Inc.*, No. 07-22502-CIV, 2008 WL 11411866 at *2 (S.D. Fla. Aug. 28, 2008) (finding dismissal unwarranted where plaintiff alleged her PTSD limited her ability to learn, study, and concentrate).

Alternatively, Plaintiff has sufficiently alleged that he was regarded by the University as having an impairment. Specifically, the operative complaint alleges that, after he disclosed to the University that was given a diagnosis of bipolar disorder at TJU and used medications to treat his bipolar disorder, the University perceived him to be disabled (ECF No. 204 ¶¶ 53, 139, 300). These factual allegations are sufficient to allege disability for purposes of his discrimination claims.

In reply, Defendant further contests the sufficiency of Plaintiff's allegations that the University's rejection of Plaintiff's application was motivated by a discriminatory intent (ECF No. 236 at 4). A plaintiff alleging disparate treatment under the ADA must show that the defendant intended to discriminate or was improperly motivated in making the discriminatory decision, while a plaintiff claiming disparate treatment under the Rehab Act must show that the defendant discriminated "solely by reason" of his or her disability. *J.A.M. v. Nova Se. Univ., Inc.*, No. 0:15-CV-60248, 2015 WL 4751149, at *3 (S.D. Fla. Aug. 12, 2015), *aff'd*, 646 F. App'x 921 (11th Cir.

2016).

Plaintiff has failed to allege facts that link the alleged discriminatory act of rejecting his application or failing to reasonably accommodate him to his disability or perceived disability. Plaintiff claims that Dr. Weismann's reference to the events at TJU could only mean his diagnosis and treatment he received at TJU or the perception that Plaintiff was disabled. However, Plaintiff does not advance sufficient facts supporting such conclusory allegation. On the contrary, the Second Amended Complaint alleges facts that if true, show that the University did not depart from its policy of not admitting applicants who had previously attended medical schools, and had not been permitted to graduate; a policy that Plaintiff alleges was communicated to him on various occasions. Nor does Plaintiff point to any other instance where the University denied admission to other disabled persons who had not been dismissed from another medical school. *See J.A.M.*, 2015 WL 4751149, at *3–4 (dismissing disparate treatment claims under the ADA because the plaintiff did not allege sufficient facts showing a plausible discriminatory complaint, instead, plaintiff alleged facts showing that the academic institution did not stray from its usual readmission policies); *see also Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 497 (11th Cir. 2015) (affirming dismissal of plaintiff's complaint because "the most plausible explanation–indeed, the one provided in the complaint itself–is that Pouyeh was disqualified from consideration [from the residency program at the University of Alabama at Birmingham] because he did not graduate from an…accredited medical school..[r]ejecting applicants based on whether the medical schools they attended were accredited…is not discrimination…").[4] Plaintiff has not alleged a causal link between his disability and the University's alleged discriminatory conduct let alone but-for causation as required by the Rehab Act. Accordingly, the discrimination claims in Counts

---

[4] In the Eleventh Circuit, the burden-shifting analysis used in Title VII discrimination claims is applicable to ADA claims. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007).

I and II should be dismissed.

The University also moves to dismiss Plaintiff's claims that it failed to provide reasonable accommodation on the basis that Plaintiff did not seek reasonable accommodations (ECF No. 211 at 6). In the Second Amended Complaint, Plaintiff alleges that he requested the following reasonable accommodations: (1) to be permitted to apply despite the University's policy that they did not admit persons who had previously been dismissed from other medical schools (ECF No. 204 ¶ 72); (2) an interview with the admissions committee so that he could present his medical records and explain his medical history (¶ 74); and (3) to speak to "new management" to present his medical history (¶ 75, 148–151).

Failure to accommodate is an independent basis for liability under the ADA and the Rehab Act. *Alboniga*, 87 F. Supp. 3d at 1337. To state a failure to accommodate claim under Title III of the ADA, a plaintiff generally must prove (1) that he is disabled; (2) is an otherwise qualified individual,; and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *See J.A.M.*, 2015 WL 4751149, at *4; *see also Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999) ("To establish a *prima facie* case of discrimination under the [Rehabilitation] Act an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability.").

Because Plaintiff has sufficiently alleged that he is disabled, Plaintiff's claim turns on whether he has alleged that he is a qualified individual and that a reasonable accommodation was not provided. Assuming without deciding that Plaintiff sufficiently alleges that he is a qualified individual, his claims should be dismissed because Plaintiff has failed to allege that he was denied a reasonable accommodation on the basis of his disability. The ADA does not require a public

entity to employ any and all means to accommodate an individual with a disability, but only to make reasonable modifications that would not fundamentally alter the nature of the service or activity of the public entity. *Alboniga*, 87 F. Supp. 3d at 1338; *see also Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 782 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 2019, 204 L. Ed. 2d 224 (2019) ("[T]he Rehabilitation Act does not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability… [w]here the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make 'major adjustments' to its program does not amount to disability-based discrimination.") (internal citations omitted).

Here, Plaintiff has not alleged that the accommodations he requested are reasonable; rather they are veiled requests made to avoid the admission requirements. With respect to his first request that he be permitted to apply despite the University's policy of not admitting applicants who had previously been dismissed from another medicals school, Plaintiff alleges that "[a]lthough this accommodation request was granted, it was never fulfilled because Plaintiff was ultimately and finally forever rejected because he was dismissed from TJU due to having a disability" (ECF 204 ¶ 73). If Plaintiff's request was that the University consider his application despite his prior dismissal, by his own allegations, the University did just that and thus there is no basis for his claim that this request was not granted.

Moreover, to the extent Plaintiff's request was to be admitted into the medical program despite his prior dismissal from TJU, a blanket request for admission with complete disregard to the University's application standards is not reasonable as it is not an accommodation at all and constitutes a major adjustment to the University's academic program. The University is not required to excuse past misconduct or lower its standards to accommodate a disabled person.

*J.A.M.*, 646 F. App'x at 925 (affirming dismissal of the plaintiff's failure to accommodate claims, noting that requested accommodations of repeated medical leave, exam rescheduling, and excusal of misconduct would fundamentally alter plaintiff's course of study and the skills learned at the academic institution, and that the school was under no obligation to provide accommodations that would fundamentally alter the nature of its medical program).

      Additionally, his request for an interview is not a reasonable accommodation. Sidestepping the ordinary course of the University's interview selection process is certainly a major adjustment to the medical program. Plaintiff argues that his request to meet with the admissions committee or "new management," was reasonable because it would have given him the opportunity to present his medical records and explain his medical and academic history; however, the Second Amended Complaint does not allege that the requested "accommodations" would have enabled him to meet the University's requirements or that granting of the accommodation would not fundamentally alter the nature of the University's program. Plaintiff cites to *Manickavasagar v. Virginia Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635 (E.D. Va. 2009), in support of his argument that his request for an interview with the admissions committee and new management was reasonable. Plaintiff's reliance is misguided because the reviewing court did not hold that an interview with the admissions committee was reasonable, on the contrary, the court explained that although the plaintiff in that case had been granted the accommodation, such request was "significant," as the university at issue granted interviews to a small number of applicants. *Id*. at 647.

      This is not the first instance in which the Court has reviewed Plaintiff's claims against the University for discrimination and failure to accommodate. The prior Report, recommending dismissal without prejudice, explained that to sufficiently state claims of discrimination and failure

to accommodate, Plaintiff had to set forth sufficient basis for his claims, including identification of his disability. While the operative complaint does sufficiently allege a disability under the ADA, it still does not allege sufficient facts to show that Plaintiff was denied admission on the basis of his disability or that the University failed to provide him with reasonable accommodations that if granted would have enabled him to satisfy the University's admissions requirement. For these reasons, I recommend that Counts I and II be dismissed with prejudice. *See Kennedy v. Bell S. Telecommunications, Inc. (AT & T),* 546 F. App'x 817, 820 (11th Cir. 2013) (affirming dismissal with prejudice of second amended complaint because despite the district court's guidance, the second amended complaint did not comply with pleading requirements).

## 2.  Retaliation

In Counts III and IV, Plaintiff brings identical retaliation claims against the University under the ADA and Rehab Act, alleging that the University retaliated against Plaintiff because he filed an action against TJU, a sister AAMC medical school. The University contends that these claims should be dismissed because Plaintiff has failed to allege that his lawsuit against TJU constitutes a protected activity and even if it did constitute a protected activity, Plaintiff has not alleged sufficient facts to connect that protected activity to the University's decision to deny his applications (ECF No. 211 at 6–7, n.3).

The *prima facie* test for retaliation under the Rehab Act is the same as one under the ADA. *Albra v. City of Ft. Lauderdale*, 232 Fed. App'x 885, 891 (S.D. Fla. 2006). To establish a case of retaliation under the ADA, a plaintiff must show that: (1) he engaged in a statutorily protected conduct; (2) he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) a causal link between the protected activity and the adverse actions. *McShane v. Ashcroft*, No. 03-20470-CIV, 2004 WL

5561681, at *7 (S.D. Fla. Aug. 31, 2004), *aff'd sub nom. McShane v. U.S. Attorney Gen.*, 144 F. App'x 779 (11th Cir. 2005). Further, the "anti-discrimination provision of the Rehabilitation Act incorporates the anti-retaliation provision of the ADA," and a claim for "retaliation under the Rehabilitation Act is the same as that under the ADA." *Albra*, 232 Fed. App'x at 891. A plaintiff establishes a causal connection if they show the defendant knew of the protected behavior and there was a "close temporal proximity between this awareness and the adverse . . . action." *Gerbier v. J.R. Eight, Inc.*, No. 11-21040-JLK, 2011 WL 13268707, at *4 (S.D. Fla. Aug. 12, 2011). Such temporal proximity, however, must be fairly close in the absence of any other evidence of causation.

The Parties dispute whether Plaintiff's lawsuit against TJU constitutes a protected activity as related to this action. The University, citing to *McShane*, argues that the action against TJU is too remote and unrelated to Plaintiff's claim against the University to constitute a protected activity. In *McShane*, the plaintiff brought claims against her employer for retaliating against her for filing an action against her previous employer three years prior. *Id*. at *8. The court found that the plaintiff's suit against her previous employer, though a protected activity under the statute, was an action against a different employer and filed three years before she was even hired by the defendant, and thus, not a protected activity related to the plaintiff's case against her employer. *Id*. The court further noted that even if the lawsuit against her former employer was a protected activity as it pertained to the present case, the lawsuit was not causally connected to the adverse employment action. *Id*.

Here too, Plaintiff alleges that his lawsuit against TJU, which he initiated in 2005, constitutes a protected activity under the ADA and that the University denied his applications to its medical school in retaliation for Plaintiff suing a sister AAMC school. Plaintiff alleges that the

University first learned of his action against TJU when he disclosed it to Dr. Goldschmidt sometime before his first application was denied in 2014 (ECF No. 204 ¶ 168). Plaintiff also alleges that prior to his disclosure, the University was unaware that he had sued TJU (*id.* ¶ 170).

Although Plaintiff's prior suit against TJU is undoubtedly a protected activity under the ADA, it is an action against different academic institution almost 9 years before Plaintiff first disclosed it to the University. Thus, the action against TJU does not constitute protected activity related to the retaliation claim in this case. *McShane*, 2004 WL 5561681, at *8.

Nor does the operative complaint allege a causal link between the protected activity and the adverse employment action. Plaintiff does not offer the date when he disclosed the lawsuit or the date(s) of the adverse action. Simply alleging that he disclosed his prior lawsuits and that his applications were denied is not sufficient to establish a causal link between the two events. *See Gerbier*, 2011 WL 13268707, at *4. In his Response, Plaintiff argues that he has alleged a causal link because Dr. Weismann represented that his applications were denied because of the events that occurred at TJU, however, the Second Amended Complaint alleges that Dr. Weismann meant only that Plaintiff's disability was the reason his applications were denied, not that he had brought an action against TJU (ECF No. 204 ¶ 70).

For these reasons, Counts III and IV should be dismissed. Additionally, I recommend that Counts III and IV be dismissed with prejudice because even if Plaintiff provided the dates of when he disclosed the action against TJU and the dates his applications were denied, the two events are at least 9 years apart and involve entirely different institutions and thus cannot be legally linked for purposes of Plaintiff's retaliation claims. *McShane*, 2004 WL 5561681, at *8.

## C. Employment Claims

### 1. Disparate Treatment (Counts VIII, XI and XIV)

Plaintiff alleges nearly identical disparate treatment claims under the ADA, FCRA, and Rehab Act, respectively. Plaintiff alleges that the University discriminated against him on the basis of his disability by wrongfully terminating him and not supporting his grant applications. Plaintiff further alleges that had he received the grant applications, he would have been promoted and the University did not want to deal with a disabled person and did not want to promote a person with bipolar disorder to a faculty position. In the operative complaint, Plaintiff identifies several employees who he alleges are sufficiently similarly situated and yet were not terminated despite issues with their common supervisor, Dr. Pearce. The University moves to dismiss these claims on the sole ground that Plaintiff has not identified comparators that are similarly situated in all relevant respects.

Where a plaintiff relies on circumstantial evidence to support a claim of discrimination under the ADA, FCRA, and Rehab Act,[5] a plaintiff must allege that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated individual outside his protected class." *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. Appx 872, 874 (11th Cir. 2013); *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Plaintiff must identify a comparator outside of his protected class who was "similarly situated in all material respects," yet was treated more favorably under the same circumstances. *Lewis v. Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (*en banc*). Pursuant to *Lewis*, a comparator

---

[5] Plaintiff's employment discrimination claims are subject to the same analysis used for Title VII claims. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) ("Under the controlling law in this Circuit, [t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims."); *see also Knowles v. Sheriff*, 460 F. App'x 833, 835 (11th Cir. 2012) (recognizing that discrimination claims brought under the Rehab Act and the FCRA are analyzed under the same framework as the ADA, and, thus, need not be addressed separately).

should, generally, have (1) "engaged in the same basic conduct (or misconduct);" (2) "been subject to the same employment policy, guideline, or rule;" (3) "been under the jurisdiction of the same supervisor;" and (4) shared a similar "employment or disciplinary history" to the plaintiff. *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453 (11th Cir. 2020).

In his wrongful termination claims, Plaintiff argues that the University did not terminate several other research associates, and thus, it is plausible that he was terminated because he was disabled. The University argues that although Plaintiff identified several current and former employees, he did not allege that the comparators were similarly situated to Plaintiff in all relevant respects, and his claims should be dismissed. In response to the Motion, Plaintiff contends that the University's Motion insufficiently challenges the lack of similarity alleged.

In the Second Amended Complaint, Plaintiff identified Ren Chase as a research associate whose relationship with Dr. Pearse had deteriorated to the point that she began calling out sick, and yet her employment was not terminated. He also identified Dr. Alejo Morales another research associate who told Plaintiff that Dr. Pearse and Dr. Ghosh were the worst supervisors he had ever had, and he was not terminated; and Clara Penas, a research associate who yelled profanities at Dr. Pearse and she was not terminated. None of these employees were terminated, instead, they were transferred to other supervisors and divisions. Plaintiff also identified Dr. Jiaqiong Wang, as another research associate who was terminated but was able to continue her medical training at a hospital affiliated with the University.

Other than alleging that the identified comparators were research associates supervised by Dr. Pearse, the Second Amended Complaint lacks facts sufficient to meet the test established by *Lewis.* Notably, Plaintiff has not even alleged that any of the identified employees were outside of his protected class. Nor does he allege facts to show that the similar employees had similar history

of employment or discipline. One of his proposed comparators, Dr. Wang, was according to Plaintiff, terminated for reasons unknown to him and thus, there is no factual basis for comparing Dr. Wang to Plaintiff, apart from having a similar position (ECF No. 204 ¶ 464–65). Nor does the Second Amended Complaint allege that Dr. Morales ever made his complaints known to anyone but Plaintiff and therefore, Dr. Morales did not display the same conduct as Plaintiff. Moreover, in his response Plaintiff acknowledges that at the relevant time, Ms. Chase did not have a position comparable to Plaintiff (ECF No. 228 at 13 n.2).

Because he has not alleged facts sufficient to identify a comparator outside his protected class against whom he was treated less favorably, his claims should be dismissed. *See Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 710 (11th Cir. 2013) (affirming dismissal of complaint where "the differences in treatment of the two groups did not support a claim of discrimination."); *Gilliam v. U.S. Dep't of Veterans Affairs*, No. 2:16-cv-255, 2019 WL 1383156, at *4 (M.D. Fla. Mar. 27, 2019) (dismissing complaint because the plaintiff "failed to identify an adequate comparator" and thus plaintiff's discrimination claims were facially deficient (alteration added; citation omitted)); *Benjamin v. Holy Cross Hosp.*, No. 11-cv-62142, 2012 WL 1900026, at *2 (S.D. Fla. May 24, 2012) (dismissing complaint and noting a "comparator must be similarly situated in all relevant respects and nearly identical to the plaintiff." (citation and internal quotation marks omitted)).

With respect to Plaintiff's allegations that the University delayed or failed to support his grant applications because he is disabled, the Second Amended Complaint does not allege any other instance in which the University delayed or withdrew support of grant applications of similarly situated persons without a disability. *See Johnson*, No. 14-24793-CIV, ECF No. 26 (S.D. Fla. May 6, 2015) (dismissing complaint for failure to state a claim where the plaintiff did not

allege sufficient facts identifying a similarly situated person who was outside of plaintiff's protected class that was not subjected to the same discriminatory treatment). While he does allege that others at the University "in a similar position as Plaintiff were applying for similar grants" (ECF No. 204 ¶¶ 569, 789), he alleges no facts to support his allegation that they were similar; nor does he allege that these others were provided treatment in this endeavor that was more favorable than the treatment afforded to Plaintiff. Because there is no logical connection between this allegation and the University's discriminatory intent, this claim should be dismissed. *Ifill v. European Wax Ctr., Inc.*, No. 18-CV-61929, 2019 WL 1993004, at *4 (S.D. Fla. May 6, 2019).

Plaintiff alleges in one conclusory paragraph that the University did not support his grant applications because it did not want to be bothered by Plaintiff's disability and did not want someone with bipolar disorder to advance into a faculty position at the Miami Project to Cure Paralysis (ECF No. 204 ¶ 417). *See Booth v. City of Roswell*, 754 F. App'x 834, 837–38 (11th Cir. 2018) (affirming the dismissal of a disparate treatment claim under the ADA because the plaintiff failed to allege the adverse employment action was motivated by his disability). Without more, Plaintiff's claims cannot survive.

Moreover, viewing the allegations in the light most favorable to Plaintiff, as the Court must do, the Second Amended Complaint does not contain enough factual allegations demonstrating either directly or indirectly that the University's decision to terminate him was discriminatory. On the contrary, the facts as alleged support only that Plaintiff was terminated because of his misconduct. Plaintiff alleges that prior to his termination, Plaintiff met with Dr. Dietrich and Dr. Pearse to discuss the status of his grant applications and request that he not be asked to work after 5:30 PM or on the weekends because he wanted to help his pregnant wife with their 15-month-old child. Plaintiff alleges that his requests were approved and at the end of the meeting Dr. Pearse

explained why he withdrew his support of Plaintiff's VA CDA-2 grant, calling Plaintiff incompetent. Plaintiff became upset and an argument ensued between him and Dr. Pearse, which prompted a security officer to be called to intervene (ECF No. 204 ¶¶ 423–430). A week after their argument, Plaintiff told Dr. Pearse he found his actions deplorable. Plaintiff's employment was terminated shortly thereafter (¶¶ 447, 450). Because Plaintiff alleges a clear, non-discriminatory reason Defendant terminated him, and because Plaintiff alleges no other facts supporting discrimination aside from Plaintiff's protected characteristic, the Second Amended Complaint does not create a plausible inference of discrimination in Counts VIII, XI and XIV, and thus those claims should be dismissed. *Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015).

Plaintiff has not previously had the opportunity to amend these claims as they were first raised in the operative complaint and his Motion for Leave represents that he would like to provide the Court with additional information regarding comparators, accordingly, I recommend dismissing Counts VIII, XI and XIV without prejudice.

### 2.  Failure to Accommodate Claims

The Second Amended Complaint also alleges three counts (Counts VII, X, XIII) of failure to accommodate within the employment context under the ADA, FCRA, and Rehab Act.

To state a claim for failure to accommodate, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *McKane v. UBS Financial Services, Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grianger, Inc.*, 257 R.3d 1249, 1255 (11th Cir. 2001)). To show he is a qualified individual in the context of claims arising from his employment at the University, Plaintiff must show that he can perform the essential functions of his job with or without a reasonable accommodation. *Id.* The essential functions of a job are the

"fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (citing 29 C.F.R. § 1630.2(n)(2)(1)). To show that the University failed to provide a reasonable accommodation, Plaintiff must identify a specific accommodation Plaintiff requested and allege that such accommodation, if granted, would enable him to perform a fundamental job duty. *McKane*, 363 F. App'x at 681.

Plaintiff alleges that the University failed to provide the following reasonable accommodations: (1) the failure to provide a disability certification letter needed to apply for the NIH K22 grant, (2) the failure of Dr. Pearse to reverse the withdrawal of his primary mentorship on Plaintiff's VA-CDA-2 grant application, (3) the failure of Dr. Dietrich to assign a primary mentor for Plaintiff's NIH K22 application, and (4) the failure to allow Plaintiff protected time to work on completing the NIH K22 grant application. Each of the proposed accommodations alleged relate to his desire to obtain a research grant. Because the Second Amended Complaint does not allege that this is an essential function of his job, he has not stated a cause of action.

Plaintiff alleges acquiring grant funding constituted part of his past performance evaluations and that if he would have received two of the grants he applied to, he would have been promoted to two different positions within the University. The law does not require an employer to accommodate an employee's request for a different position. Courts measure the reasonableness of accommodations by the extent to which they enable an employee to perform their fundamental job duties; the failure to allege an accommodation applicable to his essential job duties is therefore fatal to this claim.

Because the accommodations sought by Plaintiff were not applicable to his essential job duties, I recommend dismissing Counts VII, X, and XIII.

### 3. Retaliation

In the Second Amended Complaint Plaintiff alleges that the University retaliated against him for filing a suit against the University by delaying or failing to support his grant applications and by terminating his employment.

#### i. Grants

In Counts IX, XII, XV, Plaintiff brings identical claims under the ADA, FCRA, and Rehab Act, alleging the University retaliated against him for filing EEOC charges and a lawsuit against it by failing to assist him with his grant applications. The University moves to dismiss Counts IX and XII on the *sole* basis that Plaintiff failed to exhaust his administrative remedies, specifically, that the claims raised in the charged filed with the EEOC are not related to those alleged in the Second Amended Complaint (ECF No. 211 at 14).

Before filing an ADA or FCRA claim, a plaintiff must first file a charge of discrimination with the EEOC. *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 884 (11th Cir. 2009) (recognizing that no action may be brought under the ADA unless the alleged discrimination has been made the subject of a timely filed EEOC charge); *see also Jones v. Bank of America*, 985 F. Supp. 2d 1320, 1325 (M.D. Fla. 2013) (stating that as a jurisdictional prerequisite to filing an FCRA action, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC or the FCHR). A discrimination claim can include any kind of discrimination similar or related to, or growing out of, the allegations in the original EEOC complaint. *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004). "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint[.]" *Id.* at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)) (internal quotations omitted).

The University urges the Court to rely on *Barton v. Donahue*, No. 13-0642, 2015 WL

505664 (S. D. Ala. Feb. 6, 2015), to find that the facts raised in Plaintiff's EEOC complaint do not give rise to the retaliation claims raised in Counts IX and XII. In *Barton*, the district court dismissed the plaintiff's sexual harassment claims for failure to exhaust administrative remedies where plaintiff had checked boxes indicating she had suffered discrimination and retaliation on the basis of her sex but described the basis of her charge as retaliation against her because she had previously filed EEOC complaints, which were wholly unrelated to the claims alleged in the complaint. *Id*. at *4.

In his original EEOC complaint, Plaintiff checked the box for retaliation and clearly described the University's retaliatory act by alleging "the University of Miami is delaying my grant applications on technicalities in an effort to deny or obstruct employment that I am qualified for." (ECF No. 204 at 132). The EEOC ultimately issued a right to sue letter (*id*. at 131). Plaintiff's present judicial claim is similar and related to the allegations in his EEOC complaint. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (affirming district court's finding that the plaintiff's claim was not administratively barred where the plaintiff's EEOC complaint could have reasonably been extended to his judicial claims and noting courts' reluctance to let similar technicalities defeat a plaintiff's judicial claim). Defendant has offered no other basis for dismissal of these claims, and as such, the Motion should be denied on this ground.

In Count XV, Plaintiff alleges a retaliation claim against the University under the Rehab Act.[6] Plaintiff alleges that while he was employed at the University he applied to three grants: (1) National Institute of Health Advanced Postdoctoral Career Transition Award to Promote Diversity in Neuroscience Research ("NIH K22 grant"); (2) Veteran Affairs Career Development Award -2

---

[6] Unlike with his ADA and FRCA claims, Plaintiff, as a non-federal employee, was not required to first exhaust his administrative remedies before filing his claims under the Rehab Act. *Brown v. Georgia Dep't of Driver Servs.*, No. 7:12-CV-93 HL, 2014 WL 1686833, at *5 n.5 (M.D. Ga. Apr. 29, 2014).

("VA-CDA-2 grant"); and (3) Craig H. Neilson Foundation grant. According to the University, Plaintiff's claims under the Rehab Act are subject to dismissal because the Second Amended Complaint fails to adequately allege that the University's failure to support his grant applications is an adverse employment action because obtaining grants was not a condition of employment. Additionally, the University argues that Plaintiff has not alleged that retaliation was a but-for cause for the University to not supporting his grant applications but rather, he has alternatively pled that it was either motivated by discrimination *or* retaliation for suing the University (ECF No. 211 at 15).

A *prima facie* case of retaliation requires proof that (1) the employee engaged in statutorily protected expression, (2) the employee suffered an adverse employment action, and (3) there was a causal connection between the two events. *Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 748–49 (11th Cir. 2018). An adverse employment action has been defined as one that constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits. *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1342 (S.D. Fla. 2014). "An adverse employment action in the context of retaliation is one that harmed the plaintiff and might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McQueen v. Alabama Dep't of Transportation*, 769 F. App'x 816, 823 (11th Cir. 2019).

Plaintiff sufficiently alleges the University retaliated against him by delaying production of Plaintiff's certification letter in support of his NIH K22 grant application. Plaintiff alleges that to complete his application he required a letter from the University certifying that he was disabled, which he requested from the University (ECF No. 204 ¶ 956). Plaintiff alleges that despite his

multiple requests for the letter, the University delayed production of the certification letter in retaliation to Plaintiff commencing this action against the University (¶¶ 957). Plaintiff further alleges that obtaining the grant would have resulted in a promotion to a full-time faculty position (¶ 417, 861).

The University's argument conflates the requirement that an adverse action be sufficiently material with the requirement, discussed above in relation to Plaintiff's accommodation claims, that the accommodation relate to an essential job function. Plaintiff need only allege that he suffered an adverse action that might have dissuaded a reasonable worker from participating in the protected activity. Here, Plaintiff has done just that by alleging that he would have been promoted, and earned more money, if he had succeeded in obtaining the grant with the University's support. It is plausible that a reasonable employee would be discouraged from filing charges against the University in fear that it would not help the employee obtain prestigious awards and funds to continue research at the University. *See Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (holding that plaintiff suffered a material adverse action in the form of an unfavorable performance evaluation that *affected her eligibility for a merit pay increase* after she complained of discrimination, such treatment could deter a reasonable employee from filing or pursuing charges of discrimination) (emphasis added).

The University also argues that Plaintiff has not alleged that the retaliation was a but-for cause of the University's adverse action (ECF No. 211 at 15). Plaintiff has alleged a causal link between the adverse employment action and the protected activity. Plaintiff claims that the University purposefully delayed production of a disability certification letter necessary for his grant application after he added the University to this action (ECF No. 204 ¶ 938). Specifically, that the University delayed the letter pending the Court's decision on a previous motion to dismiss

(¶ 961). Plaintiff alleges that when he spoke to the Ms. Ward from Human Resources she advised him that Dr. Dietrich was aware of the pending action against the University (¶¶ 962, 963). Moreover, the cases cited by the University do not support its or are before the court on review of a motion for summary judgment. For example, in *Bolden v. S. A. B. E.*, No. 6:15-CV-84, 2016 WL 4030243, at \*3 (S.D. Ga. July 26, 2016), the court recognized that "[t]o survive a motion to dismiss, a plaintiff is only required to allege that the Defendant knew of the protected activity and that there was a close temporal proximity between this awareness and the adverse …action." Ultimately, the court held in that case, the plaintiff had sufficiently pled facts to establish a causal link between the adverse employment action (his termination) and the protected conduct (filing an EEOC charge). *Id.*; *see also Hill v. Lazarou Enterprises, Inc.*, No. 10-61479-CIV, 2011 WL 860526, at \*7 (S.D. Fla. Feb. 18, 2011), *report and recommendation adopted,* No. 10-61479-CIV, 2011 WL 860475 (S.D. Fla. Mar. 9, 2011) (denying in part motion to dismiss because the plaintiff sufficiently alleged retaliation claims). The University's also relies on *Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011), in support of the proposition that its failure to support Plaintiff's grants does not constitute an adverse employment action. The University's reliance on *Kavanaugh* is misplaced because there the court reviewed evidence in support of a motion for summary judgment, and here, at the motion to dismiss posture, Plaintiff has met his burden of plausibly alleging his retaliation claim.

Plaintiff also sufficiently alleged a retaliation claim as it pertains to his application to the VA-CDA-2 grant. Plaintiff claims that Dr. Pearse initially agreed to participate as Plaintiff's mentor in support of his application (ECF No. 204 ¶ 951). After Plaintiff added the University as a party to the underlying action and after he mentioned to Dr. Pearse that Plaintiff was considering filing EEOC charges against the University for issues regarding his grant applications, Dr. Pearse

withdrew his support of Plaintiff's grant application (¶¶ 938, 959). Plaintiff alleges that had he been awarded the VA-CDA-2 grant, his salary would have doubled and continued to increase every year for the term of the grant (¶ 960). Here too, Plaintiff has sufficiently alleged a retaliation claim. *See Crawford*, 529 F.3d at 974.

However, Plaintiff has not satisfied his pleading requirement relating to his claim for the University's failure to support his application for the Craig H. Neilson Foundation grant. Prior to Plaintiff adding the University to this action, Dr. Dietrich submitted a letter in support of Plaintiff's application (ECF No. 204 ¶ 942). However, once Plaintiff brought claims against the University, Dr. Dietrich was unwilling to provide Plaintiff with a second letter in support of his application representing that Plaintiff was an independent investigator, which Plaintiff alleges was necessary to complete his application (¶¶ 938). Ultimately, Plaintiff alleges, Dr. Dietrich submitted the necessary letter (¶ 947). Plaintiff does not allege that Dr. Dietrich's delay in providing him the necessary letter affected whether he was awarded the grant. *See Edwards v. Ambient Healthcare of Georgia, Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (affirming dismissal of retaliation claim because plaintiff did not allege that her employer cut her pay or made performing her job harder); *see also McQueen*, 769 F. App'x at 824 (recognizing that the Eleventh Circuit held that an employment action is not adverse where the record showed that plaintiff suffered no more than mere frustration."). Indeed, Plaintiff alleges Dr. Dietrich provided him the necessary correspondence to complete his grant application, and thus has not alleged an adverse employment action. Accordingly, the Motion to Dismiss should be granted with respect to this grant; and denied with respect to the other two.

### ii. Termination

In Counts XVI, XVII, and XVIII, Plaintiff alleges identical claims under the ADA, FCRA,

and Rehab Act, claiming that the University terminated his employment in retaliation for his filing of EEOC charges. Defendant argues that Plaintiff's EEOC charge was unreasonable and therefore does not constitute statutorily protected behavior (ECF No. 211 at 16).

To establish a *prima facie* case for retaliation under the ADA, the plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression. *Militano v. Randstad Professionals US, LP*, No. 14-21285-CIV, 2015 WL 1636115, at *21 (S.D. Fla. Apr. 13, 2015).

The University's termination of Plaintiff is undoubtedly an adverse action because it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 68. Additionally, Plaintiff has sufficiently alleged a causal link between the protected activity and the adverse employment action. Plaintiff alleges his EEOC charge was filed on February 5, 2019 and his termination was on February 18, 2019. An approximate two-week gap between Plaintiff's protected behavior and Defendant's adverse action is a close temporal proximity that sufficiently shows a causal connection. *See Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (finding that an approximate one-month gap between plaintiff's EEOC complaint and defendant's termination shows a causal link); *Militano*, 2015 WL 1636115, at *21 (finding that an approximate 17-day gap between plaintiff's complaint to a senior manager and her termination shows a causal link). Plaintiff has sufficiently alleged all three elements of his retaliation claims, so I recommend that Defendant's Motion be denied as to these claims alleged in Counts XVI, XVII, and XVIII.

## D.  FRCA Exhaustion

In Count VI, Plaintiff alleges that the University violated the FRCA by denying his

applications to its medical school on the basis of his disability and his age. The University seeks to dismiss this count because the Court lacks jurisdiction as Plaintiff did not exhaust his administrative remedies and a related dispute is before the Third District Court of Appeals for the State of Florida (ECF No. 211 at 9). Plaintiff does not dispute that his claim is being considered in the appellate court but he maintains that he has exhausted his administrative remedies (ECF No. 204 ¶ 218–220).[7]

Before filing a civil action under the FCRA, the claimant is first required to file a complaint with the Florida Commission on Human Relations ("FCHR") FCHR. *Woodham v. Blue Cross and Blue Shield of Florida, Inc.,* 829 So.2d 891, 894 (Fla. 2002). The FCHR must then affirmatively determine whether there is reasonable cause within 180 days or fail to make such a determination within 180 days before the claimant files a civil action. *Id*. If the FCHR requests information it requires for "resolving the employee's complaint and the employee fails to provide that information, the employee has failed to exhaust [his] administrative remedies." *Crawford v. Babbit*, 186 F.3d 1322, 1326 (11th Cir. 1999).

Here, Plaintiff does not allege the commission made a determination of reasonable cause. Rather, Plaintiff alleges the commission failed to make a determination within 180 days when they believed they had no authority to investigate, and thus he was permitted to seek judicial review of his claim. However, the record reflects that the FCHR terminated its process of Plaintiff's charge because Plaintiff failed to plead sufficient material allowing the FCHR to commence an investigation (ECF No. 211–1).[8] Because the FCHR had requested Plaintiff to provide facts that

---

[7] Plaintiff also argues that and that this Court should "carry [Defendant's motion to dismiss for failure to exhaust] with the case," and decide the question of whether he has exhausted administrative remedies at a later time (ECF No. 228 at 9). Plaintiff has not offered any legal basis for this Court to defer ruling on this issue and has simply cited to the Third District Court of Appeal's electronic docket.

[8] The Eleventh Circuit recognizes the incorporation by reference doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125,

warrant an investigation, a necessary endeavor before being able to determine cause, the Court considers this an inappropriate scenario in which to find the FCHR failed to make its determination within the 180-day timeline. FCHR dismissal of Plaintiff's claim because of Plaintiff's failure to provide sufficient information for an investigation cannot be equated with a failure to determine reasonable cause. Thus, the undersigned recommends the dismissal of Count VI. In his motion for leave, Plaintiff represents that he wishes to withdraw his education claims under the FCRA, and as such, I recommend dismissal of Count VI with prejudice.

**E.  Breach of Contract Claims**

A breach of contract claim requires allegations showing: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from that breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Showing the existence of a contract requires plaintiff to allege: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms" *Kolodziej v. Mason*, 774 F.3d 736, 740–41 (11th Cir. 2014) (citations omitted). A claim based on an oral contract is subject to the same requirements. *Id.* (citations omitted). For an oral contract to have achieved a sufficient specification of the essential terms, the parties must have "mutually assented to a certain and definite proposition and left no essential terms open." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 607 F.3d 742, 746 (11th Cir. 2010) (citations omitted). Additionally, to properly plead a contract, a party must plead "underlying facts showing mutual assent, such as the specific people that negotiated the alleged oral agreement and when this agreement was entered into." *PNCEF, LLC*

---

1134 (11th Cir. 2002). In order to bring a civil action under the ADA and FRCA, Plaintiff must exhaust his administrative remedies and Plaintiff does not dispute the validity of FCHR documents attached to the Motion to Dismiss.

*v. Highlander Enterprises,* LLC, No. 09-80974-CIV, 2010 WL 11504754 at *3 (S.D. Fla. Mar. 2, 2010).

### 1.     Education – Contract Related to Plaintiff's Admission

In Count V, Plaintiff alleges the University breached an enforceable agreement with Plaintiff to allow him to apply to the medical school and not be disqualified on the basis of the events surrounding Plaintiff's dismissal from TJU, despite the University's alleged policy to not admit applicants who have been dismissed from medical schools in the past. The University moves to dismiss this count on the basis that Plaintiff did not plead the elements of a contract, specifically he did not allege with whom he entered into the contract nor whether that person had authority to bind the University (ECF No. 211 at 8).

Plaintiff identifies Drs. Goldschmidt, Dr. Gardner, Dr. Mechaber, Dr. Campo, and Dr. Weismann as individuals to whom he explained the events that transpired at TJU. Plaintiff also alleges the conclusion of these meetings was an agreement that he would be allowed to apply and not be disqualified due to the events at TJU, but he would be required to retake the MCAT and do clinical shadowing, community service volunteering, and publish his research. Plaintiff moreover alleges that he was permitted to apply. Thus, Plaintiff's contract claim fails to allege any breach, as the University performed its obligations under the alleged contract.

This Court previously dismissed all of Plaintiff's breach of contract claims on the basis that Plaintiff had not alleged sufficient facts to establish a contract. The Court explained that even if Plaintiff had established the existence of a contract, the allegations showed a promise to consider his application, and as alleged, it did not appear that such promise had been breached. In his motion for leave to amend, Plaintiff seeks to add additional information regarding his communications with University administrators, however Plaintiff does not argue that such allegations will show

that a contract existed or critically that it was breached. Because the facts as alleged fail to state a claim for breach of contract, I recommend that this claim be dismissed with prejudice.

### 2.    Employment – Grants

In Count XIX, Plaintiff alleges the University entered into a contract with Plaintiff and the Craig H. Neilsen Foundation when the University sent a letter to the Craig H. Neilsen Foundation supporting the submission of Plaintiff's grant application and stating that the University would "provide the space, equipment, time, and support Dr. Datto requires to attain the goals of the proposed research, and to facilitate his development as an academic scholar." The University moves to dismiss this contract claim because Plaintiff has not alleged sufficient facts to show a contract was entered into; nor has Plaintiff alleged a breach, as the University's promise to provide the space and equipment was contingent on Plaintiff being awarded the grant, and the contingency did not happen (ECF No. 211 at 18).

In opposition, Plaintiff argues that the letter constitutes a contract because without it, the University would not have been awarded a monetary grant, and that the letter created a binding agreement between the University and Plaintiff. This argument is not persuasive as it is premised on the grant being awarded, and Plaintiff concedes that did not occur. Because the letter, the only basis for the purported agreement, does not constitute a contract between the University and Plaintiff, I recommend that Count XIX be dismissed with prejudice.

### 3.    Employment -Termination

In Count XX, Plaintiff alleges the University breached a policy "to issue any discipline deemed warranted in a fair and equitable manner" by denying his termination's appeal without holding a hearing or providing an explanation. Plaintiff seeks to enforce the fairness clause of the agreement, arguing that his termination was not fair or equitable. The University argues that

Plaintiff's contract claim is subject to dismissal because the employment policy at issue does not constitute a binding contract (ECF No. 211 at 18).

"Florida courts are reluctant to declare policy statements to be employment contracts unless there is an *express* reference in the statement to a period of employment and the benefits to accrue therefrom." *LaRocca v. Xerox Corp.*, 587 F. Supp. 1002, 1003 (S.D. Fla. 1984) (granting motion for summary judgment because the policy manual plaintiff was trying to enforce did not contain language making the manual binding on the parties and lacked language expressly providing that the manual was a separate employment contract).

In his response, Plaintiff asserts that the manual's term requiring that employees conduct themselves in a manner consistent with the University's values constitutes an offer, which he accepted through his conduct, and the University breached that agreement by denying his termination appeal unfairly. Plaintiff cites to *Bank of Am., N.A. v. Crawford*, No. 2:12-CV-691-FTM-99, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013), in support of his argument that the University's policy created a binding contract. However, in that case the court reviewed an anti-solicitation clause in an employee contract, which prevented the employee from soliciting or recruiting persons for twelve months. There, the clause had a specific term that could amount to a contract and terms that required plaintiff give up soliciting or recruiting in consideration of employment. Here, no such specific terms or consideration have been identified. *See Winnie v. Infectious Disease Assocs., P.A.*, No. 8:15-CV-2727-T-35MAP, 2016 WL 11670293, at *5–6 (M.D. Fla. Sept. 21, 2016). Because Plaintiff has not advanced any part of the disciplinary policy that constitutes a contract between the University and Plaintiff, the claim should be dismissed without leave to amend this claim.

**F. Defamation**

In Count XXI, Plaintiff alleges Defendants published three defamatory statements about Plaintiff. The University moves to dismiss arguing that none of them are defamatory in that they did not subject Plaintiff to ridicule or hatred, they were not published, or they were not actionable as pure opinions.

To state a defamation claim, a plaintiff must show the following elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018). Generally, defamatory statements tend to subject the plaintiff to hatred, distrust, ridicule, disgrace, or tend to injure the plaintiff in his profession. *Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1301 (M.D. Fla. 2013). True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions. *Turner*, at 1254. Under Florida law, a defendant publishes a "pure opinion" when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public. *Id.*

Plaintiff first alleges that Dr. Pearse's statement in an email that "The undertaking of those grant applications were on your time," was defamatory. Plaintiff alleges that this statement was sent to Plaintiff, copying Marcela Ward, Dalton Dietrich, and Dr. Mousumi Ghosh regarding the time Plaintiff spent applying to grants and caused Plaintiff to be terminated from his job, lose time bonding with his children, and significant emotional distress. The University argues that this claim should be dismissed because that statement did not subject Plaintiff to hatred, distrust, or ridicule (ECF No. 211 at 20). However, in the operative complaint Plaintiff alleged that Dr. Pearse' statement represented to the third parties copied on the email that Plaintiff was a liar (ECF No. 204

¶ 1036).

Notwithstanding, as noted by the University, Plaintiff's defamation claim cannot stand as the email correspondence was only published to managers or directors within the program and the communication was conditionally privileged under Florida law because the recipients of the emails had interests in Plaintiff's grant applications.

The author of the e-mail, Dr. Pearse, was Plaintiff's supervisor and mentor for VA-CDA-2 grant. Dr. Pearse's e-mail was only sent to other University employees that had a corresponding concern with Plaintiff's grant applications. For example, Marcela Ward is the University's Human Resources Manager, and Plaintiff's own allegations reveal he went to her with concerns about his grant applications, one of which was Dr. Pearse's withdrawal of his mentorship on the VA-CDA-2 grant (ECF No. 204 ¶ 352). Dr. Dietrich, another faculty member, had a significant interest in Plaintiff's performance as a scientific researcher as he was not only a supervisor but had also sponsored one of Plaintiff's grant applications. Dr. Ghosh encouraged Plaintiff to apply for the VA-CDA-2 grant, so his interest in the e-mail addressing grant applications is evident as is his supervisory interest in Plaintiff's performance (ECF No. 204 at 144). Because the only statement on which Plaintiff's defamation claim is based was circulated only to individuals having a strong interest in Plaintiff's employment as a researcher under Dr. Pearse's supervision, it cannot form as the basis of a cognizable defamation claim. *See Sirpal v. Univ. of Miami*, 509 F. App'x 924, 930 (11th Cir. 2013) (holding that the plaintiff's defamation claims against the University of Miami could not stand where alleged defamatory statements were made by plaintiff's supervisor to the Graduate Committee regarding plaintiff's dismissal from the lab he worked at because the statements were conditionally privileged, and the plaintiff had not shown malice); *see also Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (granting motion

to dismiss defamation claims where the alleged defamatory statements were made by a person having an intertest in the subject matter or to another person having a corresponding interest).

To the extent Plaintiff attempts to rescue his defamation claim by arguing that the conditional privilege does not apply because Dr. Ghosh was not an employee of the University,[9] rather she was a potential employer (or supporter of a grant) at the Veterans Administration Hospital Miami, his claim must still be dismissed because "an employer has a qualified privilege when the employer discloses information about a current or former employee to a prospective employer." *Bush v. Raytheon Co.*, 373 F. App'x 936, 941 (11th Cir. 2010). Moreover, Plaintiff has not alleged that Dr. Pearse sent the correspondence with malice. *Id.* ("For express malice, the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege…the incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege.") (internal quotations omitted).

Relatedly, Plaintiff also claims the following statement by Dr. Pearse in the same email is defamatory: "The development of the 3D staining model was your idea that you insisted upon, despite our previous published expertise of standard methods for immunostaining employed over many years by many staff members. Although I had insisted to use our standard technique you were adamant on this device, and yes it failed and was a waste of time." Plaintiff claims the statement is false and disparaging. The challenged statement is not actionable in a defamation claim because it was published to persons concerned with Plaintiff's grant applications. *See Sirpal*, 509 F. App'x at 930.

---

[9] In another section of the operative complaint, Plaintiff alleges that Dr. Alejo Morales told Plaintiff that Dr. Pearse and Dr. Ghosh were the worst supervisors he had ever had (ECF No. 204 ¶ 463), implying that Dr. Ghosh was in some form employed by the University or affiliated with one of its projects.

Plaintiff also challenges the third statement in his termination letter, which states: "Your refusal to perform your responsibilities constitutes insubordination under the University's Discipline Policy." This statement is not actionable as it is the University's subjective assessment of Plaintiff's performance as a research associate and it is not a statement that can be readily proven true or false. *Turner*, 897 F.3d at 1264 (holding that statement that plaintiff participated in homophobic taunting is an opinion and not actionable in a defamation suit because the statement is the defendant's subjective assessment of plaintiff's conduct and not readily capable of being proven true or false). Accordingly, I recommend dismissal of Plaintiff's defamation claims.

## G. FLSA

Plaintiff alleges the University violated the Fair Labor Standards Act by requiring Plaintiff to work overtime without compensation. However, "to allege coverage under the FLSA properly, [Plaintiff] *must either* establish the enterprise's *or* the individual's engagement in interstate commerce." *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1374 (S.D. Fla. June 13, 2016) (citation omitted) (emphasis added). Alleging the individual's engagement in interstate commerce requires alleging the plaintiff "regularly and directly participat[es] in the actual movement of persons or things in interstate commerce." *Josendi v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)) (internal quotations omitted).

Here, Plaintiff alleges that "the University is an enterprise engaged, in part, in commerce or in the production of goods for commerce[,]" however, Plaintiff fails to provide any factual allegations showing either he or the University engaged in trade, commerce, transportation, transmission, or communication with any other States. Thus, because Plaintiff has failed to allege coverage under the FLSA, the undersigned recommends the dismissal of Count XXII. Because

Plaintiff has not previously been afforded leave to amend this claim, I recommend that Plaintiff's claim be dismissed without prejudice with leave to amend consistent with this Report.

**H.  Motion for Leave to Amend (ECF No. 251)**

In his Motion for Leave, Plaintiff seeks to amend the Second Amended Complaint. Plaintiff claims that he is not sure what the deficiencies in the operative complaint entail, but that at a minimum he seeks leave to provide additional information regarding some of the claims alleged in Second Amended Complaint. The University opposes the Motion, arguing that Plaintiff has not attached his proposed Third Amended Complaint and that an amendment would likely be futile (ECF No. 255 at 2–3).

A party may amend any pleading once as a matter of course before a responsive pleading has been filed or within twenty (20) days after serving the pleading if no responsive pleading is allowed. Fed. R. Civ. P. 15(a)(1). In all other situations, the amending party must obtain written consent from the opposing party or seek leave of the court to amend the pleading. Fed. R. Civ. P. 15(a)(2). Relatedly, Local Rule 15.1 requires that a party seeking leave to amend a pleading shall attach the proposed amendment to the motion for leave. L.R. S.D. Fla. 15.1.

Plaintiff states that the proposed amended complaint is attached to the Motion, however, upon review of the attachment it is not a complaint, rather it is a summary of Plaintiff's claims against the AAMC in a separate matter. Failure to comply with the local rules justifies denial of the Motion. *Okeke v. Allied Barton Sec. Servs.*, No. 2:14-CV-531-FTM-29CM, 2015 WL 3862703, at *2 (M.D. Fla. June 22, 2015). Additionally, Plaintiff does not advance good cause for amending his complaint after the deadline designated in the Court's scheduling order (November 29, 2019). On the contrary, Plaintiff claims that "it is still unclear to Plaintiff exactly what are all the deficiencies in his operative complaint…" (ECF No. 251 at 1); and attempts to cure the unknown

deficiencies by providing a list of additional facts he seeks to allege, which he does not relate to any specific claims. *McKeever v. Liberty Mut. Grp. Inc.,* 487 F. App'x 487, 488 (11th Cir. 2012) (affirming denial of motion for leave to amend the first amended complaint where plaintiff did not advance good cause for amending his complaint after the court-imposed deadline). For these reasons, Plaintiff's Motion should be denied. To the extent that Plaintiff can amend some of his existing claims, this Court has recommended that those claims be dismissed without prejudice and that Plaintiff should be afforded leave to amend *only* those counts.

## IV.   RECOMMENDATIONS

For the foregoing reasons, I respectfully recommend that the University' Motion to Dismiss (ECF No. 204) be **GRANTED in part and DENIED in part**. The motion should be **GRANTED in part** as to Counts I–XV, XIX–XXI. All claims against Dr. Pearse in his individual capacity (Counts VII–XVIII), as well as Counts I–VI, XIX–XXI should be dismissed with prejudice. Plaintiff should be afforded leave to amend *only* Counts VII, VIII, X, XI, XIII, XIV, and XXII, and should not been afforded leave to bring new claims. The Motion to Dismiss should be **DENIED in part** with respect to Counts IX, XII, XV, XVI–XVIII. Additionally, Plaintiff's Motion for Leave to Amend (ECF No. 251) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th

Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers this 23rd day of July, 2020.

_____

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE